COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-430-CR

 

 

BYRON LAWRENCE GRAVES                                                 APPELLANT

 

 

                                                   V.

 

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

MEMORANDUM
OPINION[1]
ON STATE=S
PETITION

FOR
DISCRETIONARY REVIEW

 

                                              ------------








Pursuant to rule of appellate
procedure 50, we have reconsidered our previous opinion on the State=s petition for discretionary review.[2]  See Tex.
R. App. P. 50.  We withdraw our
judgment and opinion dated August 3, 2006 and substitute the following.

Appellant Byron Lawrence
Graves appeals his conviction and seventy-seven year sentence for aggravated
robbery.  In a single point, appellant
contends that the visiting trial court judge committed reversible error by overruling
his objection to admission of an extraneous offense at punishment because the
State did not provide him notice that it would introduce that offense into
evidence, as required by article 37.07, section 3(g) of the code of criminal
procedure.  Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(g) (Vernon 2006).  We reverse
and remand for a new trial on punishment.

Factual and Procedural
Background








The State charged appellant
in case number 0799290DCthe instant
caseCwith the offense of aggravated robbery and in case number 0799500D
with the offense of aggravated sexual assault. 
The clerk=s record in
cause number 0799290D contains a letter from appellant=s counsel indicating that he was representing appellant in several
case numbers, including numbers 0799290D and 0799500D.  On June 10, 2002, appellant=s counsel sent a letter to the State, which was filed with the trial
court clerk on June 11, 2002, asking the State to notify him pursuant to
article 37.07, section 3(g) of its Aintent to introduce into evidence during the punishment phase of the
above captioned case [which appellant=s counsel referred to only as State of Texas v. Byron L. Graves] any
evidence of other crimes, wrongs, or acts other than those arising in the same
transaction alleged to have been committed by@ appellant.

Nine months later, on March
11, 2003, the State filed a notice under penal code section 3.02 of its intent
to consolidate and join numbers 0799290D and 0799500D for trial.  Tex.
Penal Code Ann. ' 3.02
(Vernon 2003).  However, at a pretrial
hearing two days later on March 13, 2003, appellant=s counsel moved to sever numbers 0799290D and 0799500D, and the trial
court granted his motion.  The trial
court then discussed scheduling trial on number 0799500D, the aggravated sexual
assault trial.








At another pretrial hearing
on March 20, 2003, the State informed the trial court that the DNA results in
number 0799500D would have to be retested because appellant=s counsel would not agree to stipulate to the existing results after
receiving a Brady notice from the State;[3]
thus, the State announced that it was ready for trial only on number 0799290D,
the aggravated robbery.  Appellant=s counsel announced that he was ready to proceed to trial on the
aggravated sexual assault but not the aggravated robbery; however, he agreed to
the postponement of the aggravated sexual assault trial.  He then asked for a continuance on number
0799290D, the aggravated robbery, because he and the State had been focusing on
the aggravated sexual assault trial and it had been his understanding that the
aggravated sexual assault trial would potentially be dispositive of the
aggravated robbery trial.  The trial
court gave appellant two additional days to prepare for trial on the aggravated
robbery, which was to start the next week.








Later that same day, March
20, 2003, the State responded to appellant=s request for notice of extraneous offenses as to number 0799290D[4]
and listed seven extraneous offenses that it intended to introduce into
evidence pursuant to article 37.07, section 3(g) and rule of evidence 404(b).[5]  The aggravated sexual assault charged in
number 0799500D was not listed in the State=s notice.

A jury subsequently convicted
appellant of aggravated robbery.  At the
punishment phase of that trial, the State called as a witness the complainant
in number 0799500D, the unadjudicated aggravated sexual assault case.  Appellant objected on the ground that the
State never gave notice of its intent to introduce evidence of the aggravated
sexual assault in response to appellant=s request, as required by article 37.07, section 3(g).  The State responded that the aggravated
sexual assault was part of the same criminal episode and that appellant could
not have been surprised in that appellant=s counsel had known about the aggravated sexual assault charge for
over two years because he was representing appellant in several cases,
including the aggravated sexual assault case. 
The trial court overruled appellant=s objection  and admitted the
evidence but granted appellant a running objection to evidence about the
aggravated sexual assault. 

Analysis








Appellant=s sole point is that the trial court committed reversible error by
admitting evidence of the unadjudicated aggravated sexual assault at punishment
because the State did not comply with article 37.07, section 3(g).

Notice of Intent to Introduce Aggravated
Sexual Assault Evidence

Article 37.07, section 3(g) provides
as follows:

On timely request of the defendant, notice of intent
to introduce evidence under this article shall be given in the same manner
required by Rule 404(b), Texas Rules of Evidence.  If the attorney representing the state
intends to introduce an extraneous crime or bad act that has not resulted in a
final conviction in a court of record or a probated or suspended sentence,
notice of that intent is reasonable only if the notice includes the date on
which and the county in which the alleged crime or bad act occurred and the
name of the alleged victim of the crime or bad act.

 








Tex. Code Crim. Proc.
Ann. art. 37.07, ' 3(g) (emphasis added).  The
purpose of article 37.07, section 3(g) is to avoid unfair surprise, that is,
trial by ambush.  Burling v. State,
83 S.W.3d 199, 202-03 (Tex. App.CFort Worth 2002, pet. ref=d); Nance v. State, 946 S.W.2d 490, 493 (Tex. App.CFort Worth 1997, pet. ref=d).  The trial court=s decision to admit extraneous offense evidence during punishment is
reviewed for an abuse of discretion.  Sanders
v. State, 191 S.W.3d 272, 276 (Tex. App.CWaco 2006, pet. ref=d); Owens v. State, 119 S.W.3d 439, 444 (Tex. App.CTyler 2003, no pet.); see also Brown v. State, No.
02-03-00307-CR, 2004 WL 1067774, at *1 (Tex. App.CFort Worth May 13, 2004, no pet.) (mem. op.) (not designated for
publication).  However, in the absence of
reasonable notice, a trial court abuses its discretion by admitting extraneous
offense evidence.  Roethel v. State,
80 S.W.3d 276, 283 (Tex. App.CAustin 2002, no pet.) (AUtterly failing to provide the required notice would automatically
render the evidence inadmissible . . . .@); see also Owens, 119 S.W.3d at 444.

Although the State does not
concede that it failed to give appellant notice of its intent to introduce the
extraneous offense in the aggravated robbery case, it does not argue that it
did give such notice.  Its brief merely
recites the exchange between appellant=s counsel and the prosecutor and then proceeds to argue that if this
court determines that the trial court erred by admitting the evidence, there
was no harm.













Our review of the record
shows that the State never notified appellant that it intended to introduce
evidence of the unadjudicated aggravated sexual assault into evidence at the
punishment phase of the aggravated robbery trial.  After the cases were severed according to
appellant=s motion,[6]
the State filed a notice in number 0799290D only, listing seven specific extraneous
offenses that it intended to introduce into evidence in the aggravated robbery
trial.  Appellant=s knowledge that number 0799500D was pending is not equivalent to
notice that the State intended to introduce the aggravated sexual assault into
evidence.[7]  See Sarringar v. State, No.
02-02-00102-CR, 2003 WL 861698, at *4 (Tex. App.CFort Worth Mar. 6, 2003, pet. ref=d) (mem. op.) (not designated for publication) (AArticle 37.07, section 3(g) mandates that the State provide timely
notice, not of the existence of extraneous offenses, but of its intent to offer
such evidence.@); see
also Hernandez v. State, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005)
(holding that admissibility of extraneous offense evidence at guilt-innocence
is conditioned on State=s compliance
with notice requirements of rule 404(b) and citing Roethel for same
proposition as to article 37.07, section 3(g) notice required at
punishment).  Indeed, the State=s omission of that unadjudicated extraneous offense from the
enumerated list of offenses that it intended to offer in number 0799290D
indicates that it did not intend to introduce evidence of the aggravated sexual
assault into evidence in the aggravated robbery trial.  See McDonald v. State, 179 S.W.3d 571,
577 (Tex. Crim. App. 2005) (holding same in analyzing adequacy of notice under
rule 404(b)).  Moreover, because the
aggravated sexual assault had not yet been adjudicated, any notice of intent to
introduce it into evidence in the aggravated robbery trial was required to
include the date, county, and name of the alleged victim to be considered
reasonable.  See Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(g).

Our inquiry does not end,
however, with a determination that the State did not provide appellant with
notice that it intended to introduce evidence of the unadjudicated aggravated
sexual assault into evidence at punishment because appellant=s request for notice asked for notice only of extraneous offenses Aother than those arising in the same transaction@ as the aggravated robbery.[8]  Thus, we must also determine whether the
aggravated sexual assault and aggravated robbery arose out of the same
transaction.  See id. (requiring
that State give notice only upon defendant=s request); Sanders, 191 S.W.3d at 276 (holding that trial
court does not abuse its discretion by admitting extraneous offense evidence
when defendant fails to ask State for notice of its intent to offer such
evidence).








An extraneous offense occurs
in the same transaction as another offense and is, thus, admissible when the
offenses are Aso
intermixed or connected as to form a single, indivisible criminal transaction,
such that in narrating the one, it is impracticable to avoid describing the
other.@  McDonald, 179 S.W.3d at
577 (citing Rogers v. State, 853 S.W.2d 29, 33-34 (Tex. Crim. App.
1993)); see also King v. State, 189 S.W.3d 347, 354 (Tex. App.CFort Worth 2006, no pet.) (holding that extraneous offense is same
transaction contextual evidence if it is so intertwined with charged offense
that full proof of either cannot be had without eliciting testimony of the other).  Same transaction contextual evidence is
admissible Aonly to the
extent that it is necessary to the jury=s understanding of the offense,@ that is, Aonly when
the offense would make little or no sense without also bringing in the same
transaction evidence.@  McDonald, 179 S.W.3d at 577 (quoting Wyatt
v. State, 23 S.W.3d 18, 25 (Tex. 2000)).

Here, the State chose to
offer the unadjudicated aggravated sexual assault at punishment rather than
guilt-innocence, which alone suggests that the evidence of the aggravated
sexual assault was not necessary to the jury=s understanding of the evidence and therefore that the aggravated
sexual assault did not occur in the same transaction as the aggravated robbery.








The evidence at
guilt-innocence showed that around eleven p.m. on March 7, 2001, appellant
furtively approached a man who was sitting inside his truck in the parking lot
of a Motel 6.  Appellant put a gun in the
man=s ribs and, while pointing the gun at the man, made him get out of the
truck.  Appellant then drove off in the
man=s truck.  The police chased
appellant until the truck=s engine
blew up and it coasted to a stop.








Appellant testified that the
man sold the truck to him for $1,000.  In
rebuttal of appellant=s testimony,
the trial court allowed the State to introduce evidence of several extraneous
offenses and bad acts showing the events leading up to appellant=s obtaining the truck.  By
cross-examining appellant, the State introduced evidence that on the evening of
March 6, 2001, appellant had taken a gun from his friend=s truck without permission and had gone to a topless club where he
drank whiskey and took cocaine. 
Appellant left the club in the early morning hours of March 7, 2001 and
sat in front of his estranged wife=s apartment for four hours calling her repeatedly and drinking
whiskey.   Appellant testified that he
left his estranged wife=s apartment
about ten or eleven a.m., drove to Tarrant County College to take a test, and
stayed at the school until two or two-thirty p.m.  According to appellant, he then checked into
a Motel 6 and stayed there until five or five-thirty p.m.  Appellant admitted that he then went to his estranged
wife=s apartment, which he broke into by tricking her into opening the
door.  Appellant contended that his
estranged wife and her roommate then went with him voluntarily to the motel,
but he also admitted that the two women rode in the front seat, and he sat in
the back seat with the gun.  Appellant
and his estranged wife stayed in the motel room for about four or
four-and-a-half hours.  At some point
during that time, appellant let the roommate leave with the truck that they
drove to the motel in.  After appellant
received a phone call from a friend that appellant=s face was Aall over@ the news and that the police were looking for him, appellant left the
motel room and approached the man whom the State alleged appellant robbed. 

At punishment, the State
elicited testimony from the aggravated sexual assault complainant[9]
that around twelve-thirty p.m. on March 7, 2001, appellant abducted her at
gunpoint from the Tarrant County College parking lot and made her drive to a
vacant house where he sexually assaulted her. 
The complainant=s testimony
about the timing of the abduction and assault corresponds with appellant=s prior testimony that he had been at Tarrant County College from
about ten or eleven a.m. until two or two-thirty p.m.








Although the unadjudicated
aggravated sexual assault took place during the same twenty-four hour period as
the aggravated robbery and appeared to be part of a crime spree by appellant
while he was drinking and taking drugs, it occurred at a separate location,
about ten hours before the aggravated robbery, and was otherwise unrelated to
it.  Evidence of the aggravated sexual
assault is not necessary to explain the events surrounding the aggravated robbery.  And although the State was able to offer
evidence of other extraneous crimes at guilt-innocence to explain appellant=s motive for stealing the truck rather than buying it, evidence of the
aggravated sexual assault was not necessary to that explanation either and had
not been admitted.  Thus, we conclude and
hold that the aggravated sexual assault did not occur in the same transaction
as the charged aggravated robbery.

Accordingly, we conclude and
hold that the trial court abused its discretion by admitting evidence of the
unadjudicated aggravated sexual assault at the punishment phase of appellant=s aggravated robbery trial.

Harm
Analysis








Having
determined that the trial court abused its discretion by admitting evidence of
the unadjudicated aggravated sexual assault, we must next determine whether the
error was harmful.  Tex. R. App. P. 44.2.  Error in admitting evidence due to
insufficient notice under article 37.07, section 3(g) is nonconstitutional
error.  Apolinar v. State, 106
S.W.3d 407, 414 (Tex. App.CHouston [1st Dist.] 2003), aff=d, 155 S.W.3d 184 (Tex. Crim.
App. 2005); Roethel, 80 S.W.3d at 281; Brown, 2004 WL 1067774, at
*2; see McDonald, 179 S.W.3d at 578 (reviewing harm for failure to give
notice under rule 404(b) in accordance with rule 44.2(b)); Hernandez,
176 S.W.3d at 824-25 (analyzing harm in failure to provide 404(b) notice under
rule 44.2(b) and Afind[ing]
helpful@ the article 37.07, section 3(g) test for harm set forth in Roethel).  Therefore, we apply rule 44.2(b) and
disregard the error if it did not affect appellant=s substantial rights.  Tex. R. App. P. 44.2(b); see Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999); Coggeshall v. State,
961 S.W.2d 639, 642-43 (Tex. App.CFort Worth 1998, pet. ref=d).

To determine harm in light of
the purpose of article 37.07, section 3(g)Cto avoid unfair surprise and enable the defendant to prepare to answer
the extraneous offense evidenceCwe must analyze whether and how the notice deficiency affected
appellant=s ability to
prepare for the evidence.  Apolinar,
106 S.W.3d at 414; Roethel, 80 S.W.3d at 281-82; Brown, 2004 WL
1067774, at *2.  The Austin Court of
Appeals has articulated the following test in Roethel:

[W]e
will examine the record to determine whether the deficient notice resulted from
prosecutorial bad faith or prevented the defendant from preparing for
trial.  In determining the latter, we
will look at whether the defendant was surprised by the substance of the
testimony and whether that affected his ability to prepare cross‑examination
or mitigating evidence.

 








80 S.W.3d at 282.[10]  We agree with the Austin Court of Appeals=s reasoning and will follow the same test in assessing harm in this
case.[11]  See Apolinar, 106 S.W.3d at 414-15; Brown,
2004  WL 1067774, at *2  (both adopting Roethel test in article
37.07, section 3(g) cases).

Here, there is some evidence
that the lack of notice affected appellant=s ability to cross-examine the aggravated sexual assault complainant
and his ability to provide mitigating evidence. 
Although appellant indicated at the March 20 pretrial hearing that he
was prepared to go forward on the aggravated sexual assault case, the State and
appellant both agreed to postpone that trial for the purpose of having the DNA
retested.








The complainant in the
aggravated sexual assault case testified extensively at punishment in the
instant case.  The trial court granted
appellant a running objection to her testimony. 
During a break in her testimony, appellant=s counsel told the trial court that

in
light of the circumstances here, first of all, based on my conversations with
the State, it=s my
understanding that they weren=t gonna go near this case in
this trial.  Now that that=s
changed, I am not prepared to conduct an intelligent and effective
cross-examination of this witness.  And
as such, when the State passes the witness, I will request from the Court that
I be allowed to pass the witness for cross-examination at a later time after I=ve
secured my files and my notes. 

 

The State objected to appellant=s request for extra time because the complainant would have to come
back the next day and because Ahe=s [appellant=s counsel] been hired on this case for two years.  And we were set to try this case but for our
DNA three days out.@  The State also contended that appellant=s counsel would have adequate time (approximately fifty-two minutes)
to look over the complainant=s witness statement before cross-examining her.  The trial court denied appellant=s request.








Thereafter, appellant
conducted an extremely brief cross-examination of the complainant consisting of
only three questions:  AMa=am, are you
aware of the problems that the State=s having with the DNA testing in this case?,@ AWhen did
they inform you of that?,@ and AWhen did they tell you about the problems with the DNA?@

The next day, before
appellant introduced his punishment evidence, the State offered, without
objection, a copy of appellant=s statement to police regarding the unadjudicated aggravated sexual
assault.  The trial court admitted the
statement for record purposes only.  In
the statement, appellant admitted taking the complainant to an abandoned house
and having sex with her, but he claimed that it was consensual.








The State contends that Ait is clear that the State=s case [in the aggravated sexual assault trial] was not dependent on
the results of the DNA test@ because appellant=s statement to police shows that the issue in that trial would be
consent.  But if the DNA was not
necessary to the State=s case, then
it is likewise unclear why the State sought to postpone the aggravated sexual
assault trial so that the DNA could be retested.  Regardless of the reason, however, it is
clear that postponement of that trial specifically for retesting of the DNACalong with the State=s failure to give notice that it intended to introduce the evidence of
the unadjudicated aggravated sexual assault at punishment in the aggravated
robbery trialCled
appellant to believe that the unadjudicated aggravated sexual assault would not
be introduced into evidence in the aggravated robbery trial.  It is a logical inference from the record
that the State placed some importance on the DNA test results; otherwise, it
would not have postponed the aggravated sexual assault trial to wait for them.

It is apparent that the State
was frustrated by its inability to try the aggravated sexual assault case
first.  In arguing the admissibility of
the aggravated sexual assault evidence, the prosecutor stated, 

The
case we want to try, the one we really wanted to try was this case, the rape of
the girl off the campus.  And that=s
what we prepared for, that=s what everybody went forward
for.

 

So we didn=t list it on our original
notices,[[12]]
no, because, Judge, that=s the
case we were going to try.  We got
Shanghai=d
three days out by the postponement from the lab.  So we have to switch yet to another
case.  And for him to say, oh, wait a
minute, you=ve
got to turn around and tell me an offense committed in the same criminal
episode I=ve
got to give you notice of, that would be absolutely ridiculous.

 

Later, the prosecutor stated,

We were trying this case all the time for the
last eight months, up until we got hijacked three days ago.  This -- the case I=m
interested in using in punishment right now is the aggravated sexual assault
case that he and I have been discussing since last June.  That=s exactly what we were gonna
try . . . .

 








In its brief on original
submission, the State contended that Ait strains credulity@ to conclude that appellant was surprised by its offer of the
aggravated sexual assault at the punishment phase because appellant=s counsel was representing him on that charge and it had been pending
for over two years.[13]  But as we noted above, appellant=s knowledge that the charge was outstanding is hardly equivalent to
knowledge that the State would offer evidence of it at punishment on the
aggravated robbery, especially when the StateCnot appellantCpostponed
trial of the aggravated sexual assault for retesting of the DNA.[14]  And appellant=s counsel made his surprise clear on the record.[15]








We agree that the record
shows that appellant should not have been surprised by the actual substance of
the complainant=s
testimony.  Appellant=s counsel announced at the March 20 pretrial hearing that he was
prepared to try the aggravated sexual assault. 
And although it is not clear whether appellant=s counsel was aware of appellant=s statement to police, appellant should have been aware of it.








The surprise component of the
harm analysis in this case appears to turn on the significance of the State=s articulated purpose for postponing the aggravated sexual assault
trial:  retesting the DNA.  If the State=s case was not Adependent on
the results of the DNA test,@ as the State claims in its petition for discretionary review, why
postpone the trial to retest that evidence? 
And although here appellant did not object to the admission of his
statement to police Afor record
purposes@ at punishment, there is no indication as to whether this statement
would have been admissible at the aggravated sexual assault trial.  In one of his pretrial motions, appellant
requested a Jackson v. Denno hearing before the introduction of any
statements and asked that any such statement be suppressed if the trial court
determined that it was involuntary, coerced, or made without a waiver of
appellant=s
constitutional rights.  378 U.S. 368, 84
S. Ct. 1774 (1964).

The facts of this case are
unique.  There is no direct evidence of
the State=s intent
regarding the failure to give appellant notice, and appellant should have been
aware of the substance of the aggravated sexual assault complainant=s testimony as well as the content of his prior statement to
police.  But the record shows that
because of the State=s
postponement of the aggravated sexual assault trial for the express purpose of
retesting the DNA, appellant was unprepared to cross-examine the complainant
about anything other than a potential problem with the DNA.  There is nothing in the record to indicate
that appellant=s
cross-examination of the complainant was merely strategic; appellant=s counsel specifically asked the trial court for more time to obtain
his notes and files.  And it appears that
appellant relied on the significance of the retesting of the DNA and the State=s unpreparedness on that aspect of the case in formulating his
cross-examination of the complainant. 
Although these considerations do not fit neatly within the Roethel
test, we believe that they comport with its purpose and show that the deficient
notice in this case prevented appellant from fully preparing for the trial on
punishment.








Based on the foregoing,[16]
we cannot conclude that the trial court=s error did not affect appellant=s substantial rights.  See
Tex. R. App. P. 44.2(b).  Accordingly, we sustain appellant=s sole point.

 

 

 

Conclusion

Having sustained appellant=s sole point, we affirm the trial court=s judgment of conviction but we reverse the trial court=s judgment as to punishment and remand this case for a new trial on
punishment.

 

 

PER CURIAM

 

PANEL F:    LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
November 2, 2006











[1]See Tex. R. App. P. 47.4.





[2]The
State did not file a motion for rehearing, but the court of criminal appeals
granted it an extension of time to file a petition for discretionary review.





[3]On
March 19, 2003, the State filed a Notice of Brady, in which it disclosed
to appellant=s
counsel that Phillip Aviles with the Fort Worth Police Department Crime Lab had
determined that there was Aa question with the
proficiency@ of
the scientist who performed the DNA analysis in this case.  The notice further stated that A[a]
review of this particular case has not been done and a panel will convene to
determine if testing was proper in this case. 
However, it becomes necessary to retest the samples by another forensic
scientist.@





[4]The
State=s
notice specifically references only number 0799290D at the top of the page. 





[5]It
does not appear from the record that appellant had received the State=s
notice of extraneous offenses when he asked for the continuance at the pretrial
hearing earlier that day.  The pretrial
hearing began at 9:30 a.m. and ended at 10:28 a.m.  The notice of extraneous offenses is stamped
at 11:30 a.m. on March 20, and the certificate of service indicates that it was
sent to appellant=s
counsel by facsimile.





[6]The
State had filed a notice to consolidate the two cases only two days before
appellant=s
motion to sever.





[7]As
appellant=s
counsel informed the trial court, A[I]t requires more than our
knowing the case exists.  It requires
specific knowledge that they intend to use the case in the trial.@ 





[8]Rule
of evidence 404(b), which applies at guilt-innocence, relieves a party from
giving notice if the evidence relates to a crime, wrong, or act Aother
than that arising in the same transaction.@  Tex.
R. Evid. 404(b).





[9]The
complainant in the aggravated sexual assault was not appellant=s
estranged wife; she had never previously met appellant. 





[10]The
court of criminal appeals found this test helpful in assessing harm in a case
in which the State had failed to provide any notice under rule 404(b) of intent
to introduce evidence of an extraneous offense at guilt-innocence.  Hernandez, 176 S.W.3d at 824-25.  





[11]In
its petition for discretionary review, the State claims that this court
erroneously adopted and utilized the bad faith component of the Roethel
test rather than focusing on Roethel=s Aoverall
approach to a 44.2(b) analysis,@ which is to determine
whether article 37.07, section 3(g)=s purpose of preventing
surprise has been frustrated.  However,
the State did not make this argument on submission of this case; instead, it
specifically addressed the bad faith component of the Roethel test in
its brief, concluding that Athere is nothing in
the record which would demonstrate bad faith by the State.@  [Emphasis added.]  Regardless, our harm analysis is not based on
that component of the Roethel test.





[12]We
note that the first and only notices appearing in the record as to number
0799290D were filed and served on appellant after the March 20 pretrial hearing
at which the parties agreed to postpone the aggravated sexual assault trial. 





[13]We
note that appellant=s
request for notice of extraneous offenses in number 0799290D, the aggravated
robbery, had been pending for nine monthsCand had not been responded to
by the StateCbefore
the State gave notice of its intent to try the two cases together on March 11,
2003.  We cannot determine from the
record whether appellant knew about the State=s
intent to try the cases together before that time.  The State notified appellant of its intent to
offer extraneous offenses other than the aggravated sexual assault on March 20,
2003, after the trial court granted appellant=s
motion to sever the two cases.





[14]Although
it is not clear what defense strategy appellant would employ in the trial of
the aggravated sexual assault in light of the consent issue, due to the
technical nature of DNA evidenceCif appellant chose to attack
that evidenceCappellant
would presumably need time to study, prepare, and secure experts not only as to
the retested DNA, but also as to the first DNA test results and why there were
problems with those results.





[15]Appellant=s
counsel specifically asked to postpone cross-examination of the complainant
until after he had Asecured
[his] files and . . . notes.@





[16]We
further note that although the prosecutors did not overly emphasize the
aggravated sexual assault in their closing arguments, evidence of the
aggravated sexual assault made up the bulk of the State=s
evidence at punishment.