**Robert Charles McDONALD, Appellant**

v.

**The STATE of Texas.**

**No. PD–1943–04.**

Court of Criminal Appeals of Texas.

Nov. 23, 2005.

572

Kurt B. Wentz, Houston, for Appellant.

Kelly Ann Smith, District Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

PRICE, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, WOMACK, JOHNSON, KEASLER, HOLCOMB, and COCHRAN, JJ., joined.

At the appellant's trial for indecency with a child, evidence of uncharged misconduct was admitted over the appellant's objection that he did not receive notice as required by Texas Rule of Evidence 404(b). On appeal, the Fourteenth Court of Appeals held that notice was not required to admit the evidence because it arose from the same transaction as the conduct with which the appellant was charged. We granted review of the appellant's claim that notice was required because the uncharged conduct did not arise from the same transaction. We hold that the court of appeals erred because the State was required to provide notice to the appellant because the uncharged conduct introduced at trial was not part of the same transaction. However, the trial court's abuse of discretion did not result in harmful error, and we affirm the appellant's conviction.

## I. Facts and Procedural History

The appellant was charged with indecency with a child. The allegation stems from contact the appellant had with the complainant, a ten-year-old girl, while she was staying at her grandmother's house in Houston, Texas. The evidence at trial showed that the appellant had been introduced to the complainant and her grandmother on a previous occasion by the complainant's uncle. At that time, the appellant held himself out to be a priest and was introduced as "Father McDonald," although there is no record of his being ordained within the state of Texas.

On the day of the offense, the appellant presented himself during the morning at the grandmother's apartment unannounced and adorned in clerical attire. He was admitted by the complainant's grandmother, who sat in the living room with the appellant and discussed transacting from a mail-order catalog. During the visit, the appellant repeatedly asked the complainant to sit on his lap, and, once she did, he made her straddle his legs while he moved his leg under her "private area," held her by the waist when she tried to leave his lap, and kissed her breast. The complainant also testified that the appellant asked to see under her dress and tried to look under her dress. For this conduct, the appellant was charged with indecency with a child.

Later the same day, the complainant's younger female cousin arrived at the apartment after attending summer school. The complainant's sister and cousin played a game called "dog," which involved the children crawling around on the floor, barking, and acting like dogs. The complainant was not playing the game with her sister and cousin, but she was in the room and she saw the appellant pull her younger cousin's underwear and pants down to reveal her "bottom." The appellant also had complainant's cousin straddle his leg while he rocked her, touched her breast, and asked the cousin to touch his "private area."

During the trial against the appellant for indecency with the complainant, the State sought to introduce evidence of the appellant's conduct with the complainant's younger cousin. At the appellant's request, the State provided notice of its intent to introduce certain acts of uncharged misconduct involving the cousin, namely the similar act of touching the cousin's breast. Despite the appellant's timely request, the State did not notify the appellant that it would introduce evidence of the appellant pulling the cousin's pants down. Over the appellant's objection that there was no notice of the State's intent to use this evidence, the trial court admitted the testimony. The appellant was convicted of indecency with a child, pled true to enhancements concerning prior convictions, and was sentenced to life imprisonment.

The appellant appealed his conviction for indecency with a child, claiming that the trial court erred in admitting the evidence because the State had failed to provide notice as required by Texas Rule of Evidence 404(b). The Fourteenth Court of Appeals held that there was no error by the trial court in admitting the evidence without notice because the evidence arose from the same transaction, making it exempt from the notice requirement of 404(b).[1] The court of appeals also held, in the alternative, that 404(b) requires only reasonable notice of the State's intent to introduce non-character conformity uncharged misconduct and that, since the appellant introduced no authority to define the State's notice as unreasonable, he had

---

1. *McDonald v. State,* 148 S.W.3d 598, 601–02    (Tex.App.-Houston [14th Dist.] 2004).

no point of error that afforded a basis for relief.[2]

The appellant petitioned this Court for discretionary review, claiming that the court of appeals erred in finding that the evidence introduced did not require notice because it arose from the same transaction and also that the court of appeals improvidently dismissed his point of error even though he provided authority and a factual rationale for his conclusion.

We granted the appellant's petition for discretionary review.

## II. Parties' Arguments

The appellant argues that the uncharged sexual misconduct involving the complainant's cousin at a later time should not have been admitted without notice as required by Rule 404(b) and that the court of appeals erred in finding that this conduct did not require notice because it arose from the same transaction. The appellant asserts that, although he asked for notice of uncharged misconduct, the State provided notice of only some of the acts toward the cousin, such as the appellant touching her breast, but did not provide notice of its intent to introduce evidence of the appellant pulling down the cousin's pants.

Further, the appellant claims that the act admitted without notice was not part of the same transaction because it was committed later in the day and was of a far more serious nature than those for which the appellant was on trial. To support his position, the appellant cites the concurring opinion from the court of appeals, which said that the majority misapplied the applicable law and erroneously relied on the close proximity in time, location, and subject matter to determine that the appellant's actions toward complainant's cousin

were part of the same transaction as his actions toward the complainant.[3]

Finally, the appellant asserts that the court of appeals erred when it dismissed his complaint under the premise that he had failed to cite authority defining the standard for reasonable notice or a rationale for showing how the State's notice of the other offenses involving the cousin was not reasonable notice of the unspecified offenses. The appellant points out that he cited case law for the proposition that, upon timely objection, uncharged misconduct of which the appellant had no notice should not have been admitted at trial. Further, he discussed why the admission of the uncharged misconduct was damaging and why the trial court's decision was not within the zone of reasonable disagreement.

The State argues that the evidence of the appellant pulling the complainant's cousin's pants down and asking her to touch him is exempt from the notice requirement of Rule 404(b) because it arose in the same transaction as the events involving the complainant. To support this position, the State points to the fact that the complainant and her cousin were molested on the same day, during the appellant's same visit to their grandmother's apartment, and within a short time period. The State contends that the plain language of Rule 404(b) categorizes these facts as arising in the same transaction, thereby requiring no notice for admission. The State also notes that the appellant never objected to the admissibility of the evidence, only that he had not received reasonable notice as required by 404(b). Finally, the State argues that providing the appellant with notice of its intent to introduce evidence regarding contact with the

---

**2.** *Id.* at 602.

**3.** *McDonald*, 148 S.W.3d at 605 (Frost, J., concurring).

cousin in addition to a video tape detailing the uncharged misconduct at issue, there was sufficient notice to prevent surprise and to apprise the appellant of the offenses the State intended to introduce at trial involving the complainant's cousin.

### III.  Law and Analysis

#### A.  Properly Presented Point of Error

The court of appeals held that the appellant provided no authority or reasoning to show how the notice he received failed to constitute reasonable notice of the State's intent to offer uncharged misconduct.  We disagree.  The appellant properly objected at trial to the lack of reasonable notice of the State's intent to introduce uncharged offenses as required by Rule 404(b), namely that he pulled down the cousin's pants and asked her to touch him.  The appellant also properly asserted this error on appeal by providing a record that identified his objection to the lack of notice and by identifying case law, namely *Buchanan v. State*, to assert that, upon a defendant's request for notice of uncharged misconduct under Rule 404(b), the State is obligated to provide reasonable notice of that conduct.[4]  Accordingly, we hold that the appellant has presented a point of error that affords a basis for relief, and we will consider whether he had reasonable notice as required by 404(b).

#### B.  Uncharged Misconduct

The court of appeals held that the trial court did not abuse its discretion in admitting the uncharged misconduct.  It concluded that the State was not required to

provide notice of its intent to introduce evidence that the appellant pulled the cousin's pants down because this act was part of the same transaction as the appellant kissing the complainant's breast and having her straddle his leg.

In determining whether a trial court erred in admitting evidence, the standard for review is abuse of discretion.[5] A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree.[6]

In *Buchanan v. State*, we noted that "the mere presence of an offense report indicating the State's awareness of the existence of such evidence does not indicate an 'intent to introduce' such evidence in its case in chief."[7] In *Hayden v. State*, we modified this rule somewhat and said that, under some circumstances, when delivered shortly after a defendant's request, witness statements that describe uncharged misconduct can constitute reasonable notice under Rule 404(b).[8]

In *Hayden*, sometime after the defendant requested notice of uncharged misconduct, the State provided a witness list and witness statements.[9] When the State offered evidence of the uncharged misconduct during the trial, the defendant did not dispute the State's claim that he had actual notice of the uncharged misconduct through the witness statements.[10]  We held that, in light of those circumstances, we could not conclude that the trial court abused its discretion.

---

**4.**  911 S.W.2d 11 (Tex.Crim.App.1991).

**5.**  *Mozon v. State*, 991 S.W.2d 841, 846–47 (Tex.Crim.App.1999).

**6.**  *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g)).

**7.**  911 S.W.2d at 15.

**8.**  66 S.W.3d 269, 272 (Tex.Crim.App.2001).

**9.**  *Id.* at 270.

**10.**  *Id.* at 272.

The record in this case reflects that the State informed the appellant of several acts of uncharged misconduct in four separate responses to the appellant's request for notice. Most notably, the State said that it intended to introduce evidence that the appellant touched the cousin's breast. In none of these documents did the State inform the appellant of its intent to offer evidence that he had pulled the cousin's pants down.

During the trial, the State claimed that the appellant had actual notice of the pants incident because the State had allowed the appellant's counsel to view a videotape on which it alleged that the cousin told about the incident. The appellant's counsel said that he had viewed the videotape, but that there was no mention of the pants incident.[11]

■ This case is distinguishable from *Hayden* on two separate bases. First, the State submitted documents that purported to consist of its notice of intent to offer acts of uncharged misconduct. This appellant was entitled to rely upon the State's notices and to assume that these acts were the *only* ones that the State intended to offer. Second, the appellant disputed the State's claim that he had received actual notice of the pants incident. Because of these two circumstances we cannot conclude that the exception we outlined in *Hayden* applies to the facts of this case.

■ The court of appeals held that evidence of the appellant's conduct toward the complainant's younger cousin arose from the same transaction and was therefore admissible under Rule 404(b) without reasonable notice by the State. In its decision affirming the appellant's life sentence, the court of appeals held that because the evidence was "closely related in time, location, and subject matter with the charged offense, it was within the trial court's discretion to conclude that it was evidence 'arising in the same transaction' for which notice was not required under [R]ule 404(b)." [12]

■ Rule 404(b) requires the State to provide notice, upon the defendant's timely request, of its intent to introduce evidence of other crimes, wrongs, or acts. An exception to the notice requirement is when the evidence arises from the same transaction.[13] Under Rule 404(b), however, same transaction contextual evidence is admissible "only to the extent that it is necessary to the jury's understanding of the offense." [14] It is admissible "only when the offense would make little or no sense without also bringing in the same transaction evidence." [15] That is, it is admissible when several offenses are "so intermixed or connected as to form a single, indivisible criminal transaction, such that in narrating the one, it is impracticable to avoid describing the other." [16]

11. The video does not appear in the index of exhibits offered at trial and is not in the record. There is no indication in the record whether the appellant's counsel viewed the video before or after filing the request for notice.

12. *McDonald,* 148 S.W.3d at 602.

13. Tex.R. Evid. 404(b).

14. *Wyatt v. State,* 23 S.W.3d 18, 25 (Tex.Crim. App.2000); *Pondexter v. State,* 942 S.W.2d 577, 584 (Tex.Crim.App.1996) (quoting *England v. State,* 887 S.W.2d 902, 915 (Tex.Crim. App.1994)).

15. *Wyatt,* 23 S.W.3d at 25; *Pondexter,* 942 S.W.2d at 584 (quoting *England,* 887 S.W.2d at 915).

16. *Rogers v. State,* 853 S.W.2d 29, 33–34 (Tex. Crim.App.1993).

The court of appeals held that, because the challenged uncharged offense evidence occurred "on the same day, during the appellant's same visit to the grandmother's apartment, and within a short time after the charged offense," it was part of the same transaction and, therefore, was admissible without notice. As the concurring justice points out, however, the evidence about the second little girl was not necessary for the jury to understand the appellant's conduct toward the complainant.[17] The evidence concerning the complainant makes perfect sense without bringing in evidence of the appellant's conduct with the cousin and is clearly divisible in that it involves a different victim, at a different time, after the charged conduct was completed.[18] When the facts of the primary offense can be understood on their own, notice is needed for evidence of uncharged misconduct.[19] In this case, the primary offense was understandable on its own facts. We therefore conclude that the trial court abused its discretion in admitting the uncharged offense without notice because the appellant was entitled to notice upon request under Rule 404(b).

## C. Harm Analysis

Because no constitutional error is involved when evidence of uncharged misconduct is admitted without notice, we look to Texas Rule of Appellate Procedure 44.2(b). Under Rule 44.2(b), reviewing courts should disregard any error that did not affect the appellant's substantial rights. We have interpreted this to mean that the conviction should not be reversed when, after examining the record as a whole, the reviewing court has a fair assurance that the error did not influence the jury or had but a slight effect.[20] In this instance, the appellant objected only to the lack of notice as to the uncharged misconduct. He did not object to the admissibility of the uncharged misconduct itself. Accordingly, we look only at the harm that may have been caused by the lack of notice and the effect the lack of notice had on the appellant's ability to mount an adequate defense.[21]

At trial, the appellant had an opportunity to cross-examine the complainant, the source of the testimony concerning the uncharged misconduct. The record reveals the appellant's strategy was to discredit the complainant and her ability to remember specific details about her encounter with the appellant. The appellant did not deny his presence at the house at the time or on the day in question. The appellant received notice that the State would offer evidence concerning the appellant's conduct with the cousin, just not all of the conduct that the State introduced. He had received notice of the State's intent to introduce evidence of the appellant touching the girl's breast and did not object to its admissibility. If the appellant was surprised by the testimony concerning the cousin, it was only as to the additional allegation that the appellant pulled down the cousin's pants. It is hard to imagine that his defense would have been altered in any meaningful way. Furthermore, had there been legitimate surprise that required a re-evaluation of trial strategy, the appellant could have requested a continuance. Because notice as to the extraneous misconduct at issue would not have affect-

---

**17.** *McDonald* 148 S.W.3d at 605.

**18.** *See, e.g. Buchanan,* 911 S.W.2d at 15; *Rogers,* 853 S.W.2d at 33.

**19.** *See Buchanan,* 911 S.W.2d at 15.

**20.** *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

**21.** *Hernandez v. State,* 176 S.W.3d 821 (Tex. Crim.App., 2002).

ed the appellant's trial strategy, we conclude that the error did not influence the jury or had but slight effect.

## IV. Conclusion

The court of appeals erred in holding that the trial court did not abuse its discretion by admitting the uncharged offense without notice. However, the trial court's abuse of discretion did not result in harmful error, and we affirm the appellant's conviction.

HERVEY, J., concurred in the result.

COCHRAN, J., filed a concurring opinion.

COCHRAN, J., filed a concurring opinion.

I join the majority opinion. I add these comments only to elaborate on why the majority appropriately conducts a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure, rather than remanding this case to the court of appeals to make that determination.

Normally, when this Court concludes that a court of appeals has erred in rejecting a criminal defendant's point of error on appeal, we remand the case to the intermediate court to decide if the error was harmful.[1] We defer to the intermediate court and provide it with the initial opportunity to assess the degree of harm in light of the entire record,[2] and, perhaps more importantly, to provide the parties an opportunity to fully brief the issue of harm.

However, like the United States Supreme Court, we do have the inherent authority to review the trial record to evaluate whether error is harmless.[3] In _Unit-_

1. _See, e.g., Saenz v. State_, 843 S.W.2d 24, 29 (Tex.Crim.App.1992) (Clinton, J., concurring) (arguing that "[b]ecause we are a discretionary review court, and not, in this context, 'the appellate court,' [set out in former Tex.R.App. P. 81(b)(2)], we should not resolve the issue of harmfulness as a matter of first impression"); _but see id._ at 30–32 (Baird, J., concurring and dissenting) (arguing that "remanding cases for a harm analysis is an illusory display of respect and a meaningless squandering of judicial resources that our overburdened appellate court system can ill afford").

2. _See e.g., Gipson v. State_, 844 S.W.2d 738, 743–44 (Tex.Crim.App.1992) (Benavides, J., concurring) (arguing that "a due regard for the authority of our intermediate appellate courts at least militates strongly in favor" of this Court exercising restraint in assessing the harmfulness of error before the intermediate court has had an opportunity to do so because "[i]t is just not possible to review a matter which has not yet been viewed in the first place").

3. Although the explicit language in Rule 44.2(a) ("If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court

of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment") might, at first blush, suggest that only a court of appeals has the authority to reverse a case for harmful constitutional error, that is obviously not true. This Court may always reverse a death penalty conviction for harmful constitutional (or non-constitutional) error, and this court may also always review a court of appeals's determination of the harmfulness of either constitutional or non-constitutional error. What would appear to be the proper explanation for use of this specific language in Rule 44.2 is the fact that the appellate rule concerning reversible error comes immediately after the rule dealing with judgments of the courts of appeal (Rule 43), and immediately before several other rules dealing with opinions and orders issued by the courts of appeals (Rules 44–50).

Under Rule 78.1, this Court has the authority to "affirm the lower court's judgment in whole or in part" (implying that this Court has authority to affirm the judgment of a court of appeals even if we disagree with its analysis of error, but conclude that the error was harmless); "reverse the court's judgment

*ed States v. Hasting*,[4] the Supreme Court noted that because "this Court has before it the same record the Court of Appeals reviewed, we are in precisely the position of that court in addressing the issue of harmless error."[5]

The primary arguments in favor of having the appellate court which found error in the case also decide if that error is harmful are to avoid "keep[ing] this cause in the heavenly appellate orbit, delay[ing] the finality of the judgment, further exhaust[ing] judicial resources [and] the State's money, and insur[ing], in all likelihood that we will once again be able to open up the same appellate record and find ourselves right where we are today."[6] While these are powerful arguments against bouncing a criminal case back and forth between appellate courts, we, like the Supreme Court, rarely exercise our authority to make an initial harmless error review.

But there are times in which we should exercise that authority: when the record

clearly demonstrates that the error is obviously either harmful or harmless.[7] In those instances, the time, money, and effort expended on a remand are not worth the candle of comity and continued litigation.

This is one such case. Here the error is clearly harmless. Therefore, I join the majority in declining to expend scarce judicial resources by remanding this particular case to the court of appeals to re-review the record before reaching a foregone conclusion.

---

in whole or in part and render the judgment that the lower court should have rendered" (implying that this court has authority to find error in the decision of the court of appeals and reverse the judgment because that error was harmful); or "reverse the lower court's judgment and remand the case for further proceedings" (implying that this Court has authority to find error in the decision by the court of appeals, reverse its judgment and remand the case to that court for a harm analysis).

4.  461 U.S. 499, 510, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (stating, "Although we are not required to review records to evaluate a harmless-error claim, and do so sparingly, we plainly have the authority to do so").

5.  *Id.* at 510 n. 8, 103 S.Ct. 1974; *see also United States v. Lane*, 474 U.S. 438, 450, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) (when error is clearly harmless because of "overwhelming evidence," Supreme Court would review record to evaluate harmless-error claim without remanding case to court of appeals).

6.  *Woodfox v. State*, 742 S.W.2d 408, 412–13 (Tex.Crim.App.1987) (Onion, P.J., dissenting).

7.  *See, e.g., Gipson v. State*, 844 S.W.2d 738, 741 (Tex.Crim.App.1992) (finding error harmful without remand because trial court specifically relied upon erroneously admitted confession), *id.* at 743–44 (Benavides, J., concurring) (arguing that "[d]eciding the question of harm in most cases where the Court of Appeals has not yet done so produces a result which is at least potentially different from the result which would have been produced had the Court of Appeal instead resolved the question itself," but agreeing that in the present case "it seems to me that the harm is conclusively established on the record by the trial judge's admission that objectionable evidence was used to convict .... there is no potential that the result reached in the Court of Appeals, were it to review the matter, could possibly be different than the result reached by the majority here.").