# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00367-CR

**Le Roy Mott, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 56371, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

The appellant, Le Roy Mott, was found guilty of capital murder and was sentenced to life imprisonment. *See* Tex. Penal Code Ann. §§ 19.03 (specifying what constitutes capital murder), 12.31 (West Supp. 2006) (listing punishments for capital felonies). On appeal, the appellant urges that the district court erred by denying his motion for a mistrial after evidence of an extraneous shooting was admitted and also erred by admitting evidence of an extraneous theft. We will affirm the judgment of the district court.

### BACKGROUND

Early one morning in March 2004, several neighbors noticed a gray car parked in their neighborhood that they did not recognize. One neighbor later testified that he had seen the car approximately a week earlier parked in nearly the same spot. After peering into the car and noticing

its contents, the neighbors called the police to report a suspicious vehicle. Police officers Michael Miller and Robert Mackall responded to the call.

While investigating the car, the officers heard several gunshots emanating from a home nearby, and the officers quickly headed in the direction of the gunshots. When they reached the home, the officers saw a man lying in the driveway. Upon closer examination, the officers realized that the man had been shot and was now dead. The man was later identified as Reginald Singleton, who was the ex-husband of the appellant's daughter.

After investigating the exterior of the house, Mackall heard someone making noise inside the house. The officers ordered the individual to come out of the house, and the appellant opened the door and stood in the doorway. The appellant retreated back into the house but returned shortly and informed the police that there were two more victims inside the house. After securing the appellant, the officers went inside the house to search for other victims. First, they found David Singleton, Reginald's father; he had been shot and had died from his injuries prior to the officers' arrival. Second, they found Tomiko Davis. Davis was the girlfriend of Reginald and had been living in the home with Reginald, David, and Reginald's two children. Davis had also been shot, but she survived the shooting; however, as a result of the injuries she sustained, Davis is now paralyzed. Davis informed the police that more than one individual was involved in the shooting, including at least one man and one woman. Further, she stated that although she was not able to see any of the assailants, she did recognize the woman's voice as belonging to Deidra Mott Singleton—the appellant's daughter and Reginald's ex-wife.

2

Later, the police began investigating the gray car that the victims' neighbors had previously called about. The police ultimately determined that the car had been rented by the appellant's wife and discovered that the car contained several pieces of the victims' personal property. The police found guns that had been left in the victims' house and also found guns in the gray car. The car also contained ammunition, ropes, targets that had previously been shot at, and three sets of license plates.

The appellant was indicted for the capital murders of Reginald and David. The appellant was also indicted for the attempted capital murder of Davis. The present appeal concerns the appellant's conviction for the capital murder of Reginald. The State elected not to seek the death penalty for the offenses charged.

Prior to trial, the appellant filed two motions in limine asking the district court to instruct the State and its witnesses "not to refer to, allude to, or insinuate" that "the Defendant may have been a suspect or charged in any other extraneous offense" or that the State has recovered evidence of extraneous offenses or evidence "tending to show that the Defendant may have been accused of any extraneous offense" without first notifying the district court so that the court may rule on the admissibility of the evidence outside the presence of the jury. The first motion also specified that the district attorney, "Co-Counsel, and all of the State's witnesses are included within the scope of this motion and that [the district attorney] be instructed to advise them fully and adequately prior to their testimony." The district court granted these motions. The appellant also filed a motion to compel the disclosure of any evidence of extraneous offenses that the State intended to use in making its case, and the district court granted this motion as well.

3

After the State and the appellant rested their cases, the jury found the appellant guilty of capital murder. The appellant appeals his conviction.

## DISCUSSION

**Philen's Testimony**

In his first issue on appeal, the appellant contends that the district court erred when it failed to grant his motion for a mistrial requested in response to a portion of Fire Marshal Steve Philen's testimony. Philen arrived on the scene shortly after the officers went into the house and later helped treat Davis's injuries. While testifying, Philen relayed a comment Davis made while he was treating her. The relevant portion of the testimony is as follows:

Q: And when you entered the room, what position was Davis in?

A: On her back.

Q: And did you talk to her?

A: Yes, I did.

Q: What did she say, if anything?

A: Well, I established that I could control her movement, so. I was above—above her and she made several statements. The police officers were asking her questions as they came by. Was there anybody else in the house and I don't remember her answers. But I—the one statement she said to me that, "They shot me last month. I can't believe they shot me again."

Q: Okay. Now,—

[Appellant's attorney]: I'm going to object to that. That is extraneous offense which is in violation of our motion in limine.

4

. . .

[THE COURT]: All right. The objection is sustained.

[Appellant's attorney]: Your Honor, we would request instruction for the jury to disregard.

[THE COURT]: The jury will disregard the statement of the witness at that point, the last statement of the witness.

[Appellant's attorney]: Your Honor, we would request a mistrial.

[THE COURT]: And that request is denied.

On appeal, the appellant argues that the district court erred when it denied his request for a mistrial because Philen's testimony was evidence of an extraneous offense admitted in violation of the rules of evidence and in violation of the various motions in limine previously filed by the appellant. *See* Tex. R. Evid. 404(b) (prohibiting admission of evidence of other bad acts to prove "character of a person in order to show action in conformity therewith"); *see Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003) (explaining that extraneous offense "is any act of misconduct, whether resulting in prosecution or not, that is not shown in the charging papers"). In essence, he contends that Philen's testimony accused the appellant and others of having previously shot Davis. Further, he asserts that the district court's instruction to disregard did not cure the error because Philen's statements were so inflammatory.

Appellate courts review a trial court's denial of a motion for mistrial for an abuse of discretion. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). When determining whether a mistrial should have been granted, appellate courts must examine the particular facts of the case. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). In general, any error arising

from an improper question to a witness or an improper answer from a witness can be cured by promptly instructing the jury to disregard the information. *Simpson*, 119 S.W.3d at 272. A motion for mistrial should be granted only when the errors complained of are so prejudicial that the continuation of the trial, in light of the error, would be a waste of time and expense and would ultimately be futile. *Id.* To warrant a mistrial, the error must be clearly prejudicial to the defendant and must suggest that it is impossible to remove the negative impression produced in the minds of the jurors. *Id.*

After reviewing the context in which the allegedly improper statement was made and the district court's attempt to minimize any potential harm from the statement, we cannot conclude that the district court abused its discretion by failing to grant the appellant's request for a mistrial. Davis's statement to Philen that she can't believe that "they" shot her again does not specifically identify the appellant.[1] Because of this, we cannot conclude that the statement was so inflammatory and clearly prejudicial to the appellant that it was impossible to remove the negative effect of the statement from the minds of the jury members. *See Ladd*, 3 S.W.3d at 567 (holding that trial court did not abuse its discretion by denying motion for mistrial when allegedly improper statement did not actually assert that Ladd had committed criminal act). Moreover, the district court promptly

[1] We also note that when Davis subsequently testified, she in no way indicated that she was able to identify the appellant as being involved in the crime at issue in this appeal. On the contrary, in her testimony she stated that after she was shot, she saw someone wearing a black mask and dark clothing, heard a man and a woman speaking, and recognized the woman's voice but not the man's voice. Therefore, any potentially damaging effects resulting from the admission of Philen's allegedly improper testimony that were not cured by the district court's instruction were certainly cured by Davis's testimony.

instructed the jury to disregard the allegedly improper statement. *See Nobles v. State*, 843 S.W.2d 503, 513-14 (Tex. Crim. App. 1992) (holding that trial court's prompt instruction to disregard cured any error resulting from admission of testimony by witness that Nobles had previously stated that he didn't want to go to hospital to get treatment for injury because he didn't want to go back to prison).

In light of these reasons, we cannot conclude that the district court abused its discretion by failing to grant a mistrial and, therefore, overrule the appellant's first issue on appeal.

**Davis's License Plate**

In his second and third arguments, the appellant asserts that the district court erred by allowing into evidence a portion of Davis's testimony. Approximately one week before the shooting, Davis reported to the police that someone had removed her license plate from her car. Later, when the police were inventorying the items found in the gray car outside Davis's home, they recovered three license plates. At first, the police did not believe that any of the recovered license plates matched the one that had been removed from Davis's car. However, after the first day of trial, the State learned that Davis's license plate actually had been recovered from the gray car. Prior to the start of the second day of trial and before the jury had been brought into the courtroom, the State sought permission from the district court to introduce evidence showing that Davis's license plate had been found in the car and gave the appellant a copy of a police report made in response to Davis's prior complaint that her license plate had been stolen. The appellant objected, arguing that the evidence sought constituted evidence of an extraneous offense and should not be admitted. After stating that it did not believe that the evidence had been purposely hidden, the district court overruled

7

the objection. The jury was then brought into the courtroom, and the State questioned Davis about

her license plate. The relevant portion of the exchange is as follows:

Q: Prior to the March 18th incident, did your license plate off your car disappear?

[Appellant's attorney]: Your Honor, we are going to object to this line of questioning based on the objection made previously outside the presence of the jury.

THE COURT: Objection is overruled.

[Appellant's attorney]: Your Honor, we would request a running objection to this entire line of questioning.

THE COURT: You may.

Q: So did your license plate off your car disappear?

A: Yes.

Q: Do you remember was that about March 12th, 2004 when your license plate had disappeared?

A: Yes.

Q: Okay. I'm going to show you pictures again that's previously been admitted into evidence and it's State's Exhibit 52 and ask do you see your license plate, Tomiko?

A: Yes.

Q: Which one is it?

A: The Oklahoma.

Q: So the red light on it, the 279 EAY Oklahoma license plate?

A: Yes.

Q: That is Tomiko Davis'[s] license plate, correct?

A: Correct.

8

In his second issue on appeal, the appellant contends that the district court erred by admitting this portion of Davis's testimony because it constituted evidence of an extraneous theft and was, therefore, not admissible under the rules of evidence. *See* Tex. R. Evid. 404(b). Essentially, the appellant argues that because the license plate was reported missing before the criminal events at issue in this case occurred, evidence that the plate had been recovered from the car found at the scene was some evidence that the appellant had previously stolen the license plate.

When determining whether a trial court erred in admitting evidence, we review the trial court's decision for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Roethel v. State*, 80 S.W.3d 276, 280 (Tex. App.—Austin 2002, no pet.). "A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *McDonald*, 179 S.W.3d at 576.

Rule of evidence 404(b) generally prohibits the admission of evidence of extraneous offenses offered to "prove the character of a person in order to show action in conformity therewith." Tex. R. Evid. 404(b). However, the rule does allow the admission of this type of evidence for purposes other than proving character, including showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

The evidence offered was not simply proof that the appellant had engaged in other criminal conduct besides that with which he was charged in this case. On the contrary, it is some evidence that the appellant had deliberately targeted the victims and was some evidence of an overall plan to victimize Davis, Reginald, and David. *See id.*; *see also id.* R. 401 (providing that evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the

9

action more probable or less probable than it would be without the evidence"), R. 402 (stating that, in general, relevant evidence is admissible). In light of the preceding, we cannot conclude that the district court's decision to admit the evidence was so clearly wrong as to lie outside the zone of reasonable disagreement. Accordingly, we conclude that the district court did not abuse its discretion and overrule the appellant's second issue on appeal.

In his third issue, the appellant contends that the district court erred because the State did not provide adequate notice that it intended to introduce the license-plate evidence. As mentioned previously, rule 404(b) allows for the admission of extraneous-offense evidence for certain purposes but conditions its admission on the State providing reasonable notice before trial of its intent to introduce the evidence if the defendant specifically requested to be notified. *Id.* R. 404(b). Because the appellant asked to be informed of any extraneous-offense evidence that the State was planning to introduce into evidence but was not informed that the State intended to question Davis about her stolen license plate until the morning she was scheduled to testify, the appellant insists that the disputed evidence was admitted in violation of the notice provision of rule 404(b).

Because rule 404(b) contains a notice requirement that must be met before evidence may be admitted, a trial court commits error by admitting evidence of an extraneous offense if the defendant was not reasonably notified of the possibility that the evidence would be used at trial. *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005). However, the erroneous admission of evidence of an extraneous offense is not constitutional error. *Roethel*, 80 S.W.3d at

10

281. Accordingly, we must disregard the error unless the error affects the substantial rights of an appellant. *See* Tex. R. App. P. 44.2(b); *Roethel*, 80 S.W.3d at 281.

For the reasons that follow, we conclude that any error resulting from the admission of the evidence in question was harmless. First, in determining whether the admission of evidence without reasonable notice is harmless, courts should consider the harm "that may have been caused by the lack of notice and the effect the lack of notice had on the appellant's ability to mount an adequate defense." *McDonald*, 179 S.W.3d at 578. In other words, courts should consider whether the defendant was surprised by the evidence and whether that surprise "affected his ability to prepare cross-examination or mitigating evidence." *Roethel*, 80 S.W.3d at 282. The record reveals that the appellant was given an opportunity to cross-examine Davis about her license plate being stolen but chose not to question her on this or any other issue. Moreover, although the appellant claims that he was surprised by the introduction of the evidence, the appellant has failed to show how his defense was affected by the admission of the evidence or how his defensive strategy would have changed had the State informed him that it intended to introduce the evidence.

Second, in performing a harm analysis, courts should also consider whether the error resulted from prosecutorial bad faith. *Id.* There is no indication in the record that the failure to provide notice was the result of bad faith on behalf of the State, nor is there any indication that the State intended to mislead the appellant or prevent him from adequately preparing a defense by not providing notice. On the contrary, the State explained that it did not become aware of the fact that one of the license plates removed from the gray car matched Davis's stolen plate until after the close of the first day of trial when Davis's mother informed the State that she recognized the license plate.

11

Moreover, after confirming that one of the recovered license plates was indeed Davis's missing plate, the State promptly informed the appellant of its intention to question Davis concerning her stolen license plate and provided the appellant a copy of the police report made after Davis reported her license plate was missing.

Third, the other evidence of the appellant's guilt was overwhelming. The car used in the offense had been seen parked near the victims' home on several occasions, including the week prior to the incident at issue in this case. The appellant was found at the scene a few minutes after the police heard the gunshots, and Davis stated that after she had been shot, she heard a male speaking in the house. Several items of the victims' property had been removed from their home and placed into a car rented by the appellant's wife, and the appellant had the keys to that car in his pocket. Several guns and ammunition were recovered from the car and the house, and Davis testified that the guns did not belong to anyone who had been living in her house. The police also recovered ropes and targets that had been used for shooting practice from the car. An expert testified that various shell casings recovered from the house and from Reginald's body were fired from the guns found at the scene. The appellant's fingerprints were found on various items that had been taken from the house. Stains on the appellant's clothes, including his gloves, matched the DNA profiles of both Reginald and David.

Moreover, the State did not emphasize the theft of Davis's license plate when questioning any of the witnesses or in its closing arguments. Other than asking Davis whether her license plate had been removed a week prior to the shootings, the State only mentioned that the license plate had been stolen once when it was giving its closing arguments. In its closing, the State

12

listed various items that had been recovered from the appellant or the car and stated, "[the appellant] had [Davis's] license plate which he'd stolen earlier." Furthermore, in concluding that the admission of the testimony was harmless, we also note the relatively minor nature of the extraneous offense compared to the severity of the charges levied against the appellant.

For all these reasons, any error resulting from the admission of evidence relating to Davis's license plate had, at most, only a slight influence on the appellant's ability to mount an effective defense, and we therefore conclude that the error was harmless. Accordingly, we overrule the appellant's third issue on appeal.

## CONCLUSION

Having overruled all of the appellant's issues on appeal, we affirm the judgment of the district court.

---

David Puryear, Justice

Before Justices Patterson, Puryear, and Pemberton

Affirmed

Filed: August 30, 2007

Do Not Publish

13