

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00161-CR

**CLIFFORD WAYNE GREEN,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2012-1908-C1

## MEMORANDUM  OPINION

Clifford Wayne Green was indicted on two counts of aggravated sexual assault of a child.  The jury returned a verdict of not guilty as to Count 1 and a verdict of guilty as to Count 2.  The jury assessed punishment at 35 years confinement and a $10,000 fine.  On December 23, 2015, this Court issued an opinion reversing Green's conviction and remanding the cause to the trial court.  The State filed a petition for discretionary review

with the Court of Criminal Appeals. The Court of Criminal Appeals reversed this Court's judgment and remanded the case for further consideration in this Court. We affirm.

## Background Facts

M.J. testified that she lived with her mother and Appellant, her mother's boyfriend. In February 2000 when M.J. was in the seventh grade, they moved to Lorena, Texas. M.J. testified that when she was in eighth grade she failed a test at school, and she asked Appellant to sign the test for her because she did not want to get in trouble with her mother. Appellant told her he would sign the test, but she had to do "exercises" for him. M.J. testified that Appellant laid down on his back and told her to pull down her underwear. Appellant then told M.J. to sit on his face, and he touched her private parts with his tongue. M.J. said that she felt pain and that she thought Appellant used his penis, but she could not say for certain that he used his penis.

M.J. testified that Appellant told her not to tell anyone or he would hurt her mother and blame her uncle who was recently released from prison. M.J. stated that Appellant told her he was on parole for murder. Appellant moved out of the house several weeks later.

In 2012, when M.J. was a senior in college, she told her pastor what happened with Appellant, and the pastor encouraged M.J. to tell her mother. M.J. told her mother a few weeks later, and they later reported the incident to the sheriff's department.

## Ineffective Assistance

Appellant argues that he "received ineffective assistance of counsel because he was denied conflict-free representation because Appellant's consulting expert testified as a witness for the State to Appellant's detriment." The State called Dr. William Lee Carter to testify at trial. The State noted that Dr. Carter had not counseled M.J. in this case, but the State had asked Dr. Carter to look at their case and help figure out the issues where the jury would need assistance. The State asked Dr. Carter if he had evaluated Appellant, and Dr. Carter responded that he had not. Dr. Carter testified about the relationship between the accuser and the person being accused. Dr. Carter explained how the relationship between the accuser and the person accused may cause the child not to tell anyone about the abuse.

The State questioned Dr. Carter about Appellant's relationship with M.J. and how the relationship might have affected M.J.'s decision not to disclose the offense. Dr. Carter testified that 50 to 70 percent of child victims do not report sexual abuse and "carry their secret well on into adulthood."

After Dr. Carter had testified for approximately 30 minutes, the Appellant's trial counsel objected to Dr. Carter's testimony. There was a discussion out of the presence of the jury, and Appellant's trial counsel revealed for the first time that Dr. Carter had evaluated Appellant as a consulting defense expert. The State informed the trial court that it had given Appellant's trial counsel notice of its intention to call Dr. Carter at trial.

Appellant's trial counsel responded that he assumed Dr. Carter would inform the State Appellant had retained him in this case. The trial court noted that Dr. Carter had spent 30 minutes testifying for the State "when all this time you knew that he had examined your client, and I certainly didn't know it. The State didn't know it, so … I'm really on the horns of a dilemma here." Appellant's trial counsel stated that he did not say anything when the State called Dr. Carter because he was not sure for what purpose they were calling him.

Dr. Carter stated outside the presence of the jury that he had forgotten that he did an evaluation of Appellant and that he is not relying on that evaluation in his testimony. The trial court asked Dr. Carter whether he recalled anything about the evaluation that would affect his testimony. Dr. Carter responded that he did not.

The trial court stated:

Here's what we're going to do. Since the proverbial cat is already out of the bag, I'm not going to try and put it back in. I'm going to let Dr. Carter go ahead and testify as he would in any of the many cases he's testified to in this courtroom and in this courthouse. Dr. Carter if there's any question you're asked by the State or, I guess, by anybody that triggers something in your mind that you've got an ethical conflict or that you're violating any privileged information between you and the Defense, you say 'I think I need to talk to you Judge, outside the presence of the jury.'

…

Well, this is a fine mess. All right. We're going to continue as though nothing had happened. I wouldn't know how to - - any problem we've got, I wouldn't know how to cure it now, anyway. Anybody have any other suggestions? All right. Hearing none, we're going to take a break. I've got a headache.

Appellant's trial counsel requested a mistrial. The trial court denied the mistrial and stated:

> Had you made the Court aware of any possible conflict at the - - when Dr. Carter came in and testified, I might have to consider that a little more strongly, but at this point, as I said, I don't know how to put the cat back in the bag except to instruct everybody, and I - - as I think I already have, that if Dr. Carter feels like he's been asked a question that - - that in any way triggers his memory of anything the Defendant told him that he'll call that to the attention of the Court, and we'll get outside the presence of the jury and discuss it. I don't think I can penalize the State for anything because they - - they had no idea about the situation any more than I did.

Dr. Carter continued his testimony. He testified about other reasons a child victim might not report abuse. Dr. Carter testified why a child might tell a peer about the abuse first, as M.J. did in this case, and also about the significance of telling a pastor as M.J. did in this case. Dr. Carter agreed with the State that in telling her pastor, M.J. did not seem to have an agenda or a motive. The State also questioned Dr. Carter on the reliability of M.J.'s statement.

Dr. Carter discussed the characteristics of sex offenders and things he notices in evaluating sex offenders. The State questioned Dr. Carter about what he observed when watching the videotaped interview Appellant gave at the sheriff's department and asked Dr. Carter to evaluate Appellant's statements and criminal history. Dr. Carter further testified about the percentage of false allegations of sexual abuse and that M.J. had no motive or agenda to make a false allegation. Dr. Carter agreed with the State that this case falls into the percentage of cases that are unlikely to be false allegations.

In our December 23, 2015 opinion, this Court found that Appellant received ineffective assistance of counsel. The Court of Criminal Appeals found that this Court erred in finding that Appellant received ineffective assistance of counsel, and remanded the case for consideration of Appellant's complaint under *Cuyler v. Sullivan*, 446 U.S. 335 (1980).

Appellant argues that he was denied conflict-free representation as set out in *Cuyler*. Appellant does not complain that his attorney-client privilege was violated by Dr. Carter's testimony at trial, but rather that his right to conflict-free representation must necessarily extend to trial counsel experts such as Dr. Carter. Appellant contends that under *Cuyler* the right to conflict-free representation must include all of an accused's defense team, including a consulting expert.

In *Cuyler*, the defendant argued that he was denied the effective assistance of counsel because his lawyers had a conflict of interest in that they also represented his codefendants. *Cuyler v. Sullivan*, 446 U.S. at 345. The Court held that in order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. at 348. Appellant argues because Dr. Carter was both a consulting expert for the defense and a testifying expert for the State, he had an actual conflict of interest. He contends that the rule in *Cuyler* extends to the entire defense

team and that by his trial counsel allowing the testimony, he received ineffective assistance.

Appellant complains of Dr. Carter's conflict, but applies the conflict to his trial counsel's failure to object to Dr. Carter's testimony. We find that this is not the type of conflict *Cuyler* addressed. In *Cuyler*, the Court held that it is a violation of the Sixth Amendment when the attorneys' conflict adversely affected the attorneys' performance. Appellant is not arguing that Dr. Carter's conflict adversely affected Dr. Carter's performance, but rather Dr. Carter's conflict adversely affected his trial counsel's performance. That is already protected by the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 668 (1984)[1]. Under the facts of this case, we decline to hold that *Cuyler* extends to expert witnesses hired by the defense.

Appellant also argues that in *Ake v. Oklahoma*, 470 U.S. 68 (1986),the Supreme Court recognized the requirement of an independent expert and that right is applicable to his Sixth Amendment right to conflict-free representation under *Cuyler*. In *Ake*, the Court held that an indigent defendant has a constitutional right to a court-appointed expert in some cases. *Ake v. Oklahoma*, 470 U.S. at 83. We do not find *Ake* to be applicable to Appellant. Appellant retained Dr. Carter as an expert, and the State was unaware that

---

[1] We note that the Court of Criminal Appeals found that this Court erred in finding Green received ineffective assistance of counsel under the standards in *Strickland v. Washington*.

Dr. Carter had consulted with Appellant until trial. Appellant was not denied access to an expert to aid in his defense. We overrule the first issue.

## Admission of Evidence

In his second issue, Appellant complains that the trial court erred in admitting testimony that he was on parole. In determining whether a trial court erred in admitting evidence, the standard for review is abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex.Crim.App. 2005). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id*.

Before opening statements, the State informed the trial court it would get into an extraneous matter during opening statements and during the presentation of evidence. The State intended to offer testimony that Appellant told M.J. that he was on parole for murder. M.J. was afraid of Appellant and that contributed to her delayed outcry. Appellant was not actually on parole for murder, but for aggravated robbery. The State did not intend to offer evidence of why he was on parole, but rather just that he was on parole and M.J.'s knowledge of his parole status contributed to her delayed outcry. The trial court found that the evidence was admissible and that the probative value outweighed the prejudicial effect. The trial court overruled Appellant's objections to the evidence and granted Appellant a running objection.

For extraneous offense evidence to be admissible under both Rule 404(b) and Rule 403, that evidence must satisfy the following two-prong test: 1) whether the extraneous offense evidence is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character; and 2) whether the probative value of the evidence is sufficiently strong so that it is not substantially outweighed by unfair prejudice. *Johnston v. State*, 145 S.W.3d 215, 220 (Tex.Crim.App. 2004).

The State introduced the evidence that Appellant was on parole to explain M.J.'s delayed outcry. An extraneous offense is admissible to explain why a victim of sexual assault did not make a prompt outcry. *See Brown v. State*, 657 S.W.2d 117, 119 (Tex.Crim.App.1983); *Wilson v. State*, 90 S.W.3d 391, 394 (Tex.App.-Dallas 2002, no pet.). We find that the trial court did not abuse its discretion in allowing the evidence that Appellant told M.J. he was on parole. We overrule the second issue.

## Conclusion

We affirm the trial court's judgment.


AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed January 10, 2018
Do not publish
[CRPM]

