

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-18-00142-CR

---

JERMAR JAMIE FULLER, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. 59,981-A

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

After a jury found Jermar Jamie Fuller guilty of forgery,[1] the trial court sentenced him to six years' confinement in prison. In a single point of error,[2] Fuller contends the trial court erred when it allowed the State to introduce evidence of an extraneous offense without first having provided him the appropriate notice as set out in Rule 404(b) of the Texas Rules of Evidence.[3] The State responded that it had given prior notice of its intention to introduce evidence of the other offense when it notified Fuller before trial that it intended to use evidence that Fuller had been "in possession and trafficking marijuana in Wichita Falls, Wichita County Tx before 10-10-16." Impliedly, the trial court ruled that this was sufficient notice to comply with the requirements of Rule 404(b). Even if the notice supplied by the State was not sufficient to meet the notice requirement of Rule 404(b), we find that Fuller was not harmed by the introduction of the complained-of extraneous-offense evidence, and we therefore affirm the trial court's judgment.

---

[1]The State's indictment against Fuller stated,

> [O]n or about 06th day of July, A.D. 2016, in said county and state [Fuller] did then and there, with intent to defraud or harm another, possess with intent to transfer or pass or pay with, a forged writing, knowing such writing to be forged, and such writing had been so made or completed that it purported to be United States' currency, but it was not United States' currency . . . .

[2]In his brief, Fuller sets out three separate issues; however, all three of his complaints relate to the State's failure to provide him with notice of its intent to use extraneous-offense evidence during trial.

[3]Rule 404(b) provides that in a criminal case, evidence of an additional crime for which a defendant is not then on trial is

> admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief.

TEX. R. EVID. 404(b). Although Fuller makes no reference on appeal to a prior request for such information having been made (such a request having been a predicate to that relief), we note that the trial court indicated that the request had been made, and we find such request in the record.

## I. Background

Kristy Johns, who worked in housekeeping at America's Best Value Inn in Wichita Falls,[4] testified that while cleaning one of the motel's rooms during the summer of 2016, she found what she initially believed to be cash.[5] According to Johns, the room contained a single queen bed and had been designated as a room in which smoking was prohibited. Johns explained that when she opened the door to the room, "[i]t was disgusting." She went on to say that the room was "[t]rashed." She continued, "There was trash everywhere. It was definitely smoked in."

After seeing the messy room, Johns called for assistance from Whitney Amyotte, who was also employed as a housekeeper at the motel. The pair began putting the trash into black trash bags and then placed them into a trash receptacle. Next, Johns began changing the linens on the bed, but when she removed the pillowcase from one of the pillows, she noticed what she believed to be a twenty-dollar bill on the floor next to the bed. Johns stated, "At that point in time, I really thought it was the only bill, until I lowered myself down, and that was not the only bill."

Johns explained that the money she had discovered consisted of twenty- and fifty-dollar bills and that "[i]t was as if somebody might have laid it underneath there, but it wasn't stacked up perfectly.[6] It was a little fanned out." Johns immediately drew Amyotte's attention to the money.

---

[4]Originally appealed to the Second Court of Appeals in Fort Worth, Fuller's case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). Because this is a transfer case, we apply the precedent of the Fort Worth Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[5]Johns stated that she was cleaning a block of rooms between rooms 212 and 215. On a diagram, Johns identified the particular room in which she found the money. The diagram was also admitted into evidence.

[6]The money Johns found was admitted into evidence.

3

Johns then picked up the supposed money and began counting it; however, she stopped counting when she realized "it was not real money." She explained that the paper was "rough" and "crooked," stating, "The prints of the photos, they weren't - - not on the paper straight. They had a tilt to it. And the color was definitely wrong."[7] Johns said there was "roughly around a thousand dollars." She immediately took the money to the motel office, where she gave it to Bobby Patel, the owner of the motel.

Johns had known Fuller for about seventeen years.[8] She explained that they were acquaintances and that if they saw one another, they would "say hello and talk, and that's usually about it." Johns stated that she had had a conversation with Fuller at the motel after he had returned with a "bag of stuff" from the nearby convenience store. At the time, however, she did not know what room Fuller had rented. Johns had seen Fuller with another male individual on one occasion about the time he was leaving the motel in a car driven by Fuller, but spoke to neither of them.

On cross-examination, Johns stated that the hotel's queen-sized beds were large enough to hold two individuals. Johns said she realized that some people leave items in the rooms without the other occupants of the room knowing about it. Fuller asked Johns about the trash she found in the motel room. Johns stated that in addition to "food trash," she also found "cigarillo packages

---

[7]According to Johns, the color of the money "was way too dark." Johns explained that she had been employed as a store manager, stating, "I definitely have cash references, and I know what it is supposed to look like."

[8]Johns explained that some of Fuller's family lived in a trailer park that her parents had managed and that she had attended school with Fuller.

with the tobacco on the inside."[9]  Johns indicated that there was sufficient trash left in the room for two people to have left that much.

At that point, the State asked to approach the bench, stating,

> Judge, [Fuller] asked a question about the types of trash that were located in the room. . . . I had been staying away from the issue because I think it potentially got into an extraneous[-offense] subject.  But I think he opened the door, with regard to the cigarillo and tobacco and what else she saw in the room amongst the trash.

Fuller disagreed that he had opened the door to extraneous-offense evidence and also objected to the lack of "notice that any extraneous items were found or located in the room."  The trial court overruled Fuller's objection, finding that the State had given proper notice.  Johns then testified that she had seen marihuana and marihuana seeds in the room.  Johns went on to state that she had seen someone (whom she did not know) other than Fuller open the door to the motel room during the time Fuller was renting it.  She also stated that she neither knew who left the "money" in the room nor knew of anyone who knew of the existence of the money before she cleaned the room.

Patel, who had owned the motel for about six years, indicated that when a room is rented, he accepts both cash and credit cards and that he requires people who rent rooms to provide photo identification or a driver's license,[10] this proof of identity then being scanned into the computer, along with their personal information, such as name, address, and telephone number.  The person working at the front desk is required to record the time of day an individual checks in and checks out of the motel.  According to Patel, it is the motel's policy that when a housekeeper finds personal

---

[9]Johns explained that she saw the "guts" of the cigarillos in the room while she was cleaning.

[10]A copy of Fuller's driver's license was admitted into evidence.

property in a motel room after a guest has checked out, the housekeeper is required to bring the found item to the office.

Patel recalled the day that one of the housekeepers brought a "large sum of money" into the office and that the money had been discovered in room 214 of the motel.[11] According to Patel, when he looked at the money, it looked "fake,"[12] and he used a "counterfeit detection pen" to determine that it was, in fact, counterfeit. Patel then discovered that there were two twenty-dollar bills in the motel's cash register that likewise appeared to be counterfeit money.[13] Patel determined from the motel's records that Fuller had been the last person before that day to rent room 214.[14] The motel's records also showed that Fuller checked into the motel on July 4, 2016, for a two-night stay and that he used cash to pay for the room.

## II. Discussion

In his sole point of error, Fuller complains of the admission of Johns' testimony that she had seen marihuana in Fuller's room. Specifically, Fuller contends that (1) he did not have sufficient notice that the State intended to use the evidence of the existence of the marihuana, (2) the trial court erred by admitting the evidence of the extraneous offense, and (3) he was harmed

---

[11]Patel could not recall whether Johns or Amyotte brought the money into the office, but he was certain that one of them had done so.

[12]Tony Ramirez, a detective with the Wichita Falls Police Department who had been trained to investigate cases such as this one, testified that in his opinion, the money found in the motel room was counterfeit money. Ramirez explained how counterfeit money and genuine United States currency differ in appearance.

[13]According to Patel, the money that had been found in the motel room was similar looking to the money he found in the register. Patel stated that the money he believed to be counterfeit amounted to around $800.00 and was made up of twenty- and fifty-dollar denominations. After making these discoveries, Patel contacted the police department.

[14]The State offered, and the trial court admitted, the records showing that Fuller had been the last person to rent the room.

as a result of the trial court's error. The State maintains that Fuller did receive sufficient notice and that even if he did not and the trial court erred in admitting the complained-of evidence, Fuller was not harmed by this supposed oversight.

The admission of extraneous-offense evidence without proper notice is nonconstitutional error subject to a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 44.2(b). An appellate court will disregard any error that does not affect appellant's substantial rights. *Id.*; *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005). "[W]e look only at the harm that may have been caused by the lack of notice and the effect the lack of notice had on the appellant's ability to mount an adequate defense." *McDonald*, 179 S.W.3d at 578 (citing *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005)).

Even assuming (without deciding) that the trial court erroneously overruled Fuller's objection regarding the lack of reasonable notice pursuant to Rule 404(b)(2) of the Texas Rules of Evidence, we overrule Fuller's complaint because he has failed to demonstrate that any such error harmed him. The Texas Court of Criminal Appeals has cited with approval a statement by the Third Court of Appeals,

> Accordingly, we must assess harm from the violation of [a notice provision similar to Rule 404(b)'s] against its intended purpose. Although the violation of the notice provision resulted in the improper admission of evidence, we cannot employ the harm analysis used for violations of the rules of evidence concerning relevancy because the purpose of those rules differs from the purpose of [the Rule 404(b) notice provision]. The rules of evidence governing relevancy limit the use of evidence that may be unfairly prejudicial or misleading; for instance, evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person to show that the commission of the crime at issue is consistent with the defendant's character, but is admissible for other purposes. . . . When evidence of an extraneous offense is admitted to prove such character conformity, we examine the record to determine how the admission of this **substantively inadmissible** evidence affected

7

the jury's verdict. . . . That test is appropriate because the erroneous admission of the evidence thwarts the rule's purpose of shielding the jury from evidence used for improper reasons. . . . **The notice requirement found in [. . . Rule 404(b)], however, does not relate to the substantive admissibility of the evidence**. . . . The lack of notice does not render the evidence inherently unreliable, but instead raises a question about the effect of procedural noncompliance. The purpose of the notice requirement is to enable the defendant to prepare to meet the extraneous offense evidence. . . . Thus, we must analyze how the deficiency of the notice affected [the defendant's] ability to prepare for the evidence.

*Hernandez v. State*, 176 S.W.3d 821, 824–25 (Tex. Crim. App. 2005) (alteration in original) (footnote omitted). When deciding whether a defendant was harmed by the introduction of such evidence, reviewing courts have looked at the following factors in their determination: (1) whether the defendant was surprised by the lack of reasonable notice;[15] (2) whether the admission of the evidence resulted from prosecutorial bad faith;[16] (3) whether the defendant was unable to prepare his cross-examination or present mitigating evidence;[17] (4) whether the defendant moved for a continuance in order to prepare a defense to the evidence;[18] and (5) whether the defendant has demonstrated how his defense strategy might have differed had the State properly notified him of its intention to introduce the extraneous-offense evidence.[19]

In this case, the marihuana was situated in a motel room in which Fuller had been staying for at least two nights, and there was no intervening renter of the room after Fuller's departure. It

---

[15]*See Hernandez*, 176 S.W.3d at 822–23.

[16]*See Roethel v. State*, 80 S.W.3d 276, 282 (Tex. App.—Austin 2002, no pet.).

[17]*See McDonald*, 179 S.W.3d at 578.

[18]*See Webb v. State*, 36 S.W.3d 164, 183 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

[19]*See Hernandez*, 176 S.W.3d at 823.

is, therefore, reasonable to believe that Fuller was well aware of its existence, significantly diminishing any assertion of surprise. *See id.* at 822–23. Further, there is no indication that the State offered the evidence as a result of prosecutorial bad faith. At trial, the State maintained that it had given Fuller adequate notice of its intent to use the complained-of extraneous-offense evidence.[20] It also argued, as it continues to do so on appeal, that Fuller "opened the door" to the introduction of the extraneous-offense evidence when he began questioning Johns about the content and nature of the trash left in the motel room. Regardless, there is nothing in the record to indicate that the State acted in bad faith. In addition, Fuller cross-examined Johns regarding the existence of the marihuana in the motel room and the fact that she had seen someone other than Fuller inside the room during the same time the room was occupied by Fuller. Further, although Fuller objected to the admission of the extraneous-offense evidence, he did not ask for a continuance in order to prepare a defense to the evidence of the other offense. Lastly, Fuller's defenses at trial were that (1) he did not know the money was counterfeit and (2) the man Johns had seen in the room had, unbeknownst to Fuller, given him the counterfeit money. Fuller failed to show that (or how) his defensive strategy would have been different from that he employed had he received adequate notice of the State's intent to use the complained-of evidence at trial.

Accordingly, because Fuller did not show that the State's failure to give proper notice of the extraneous-offense evidence would have affected his trial strategy, "we conclude that the error

---

[20]On April 12, 2018, the State sent Fuller its "Notice of Intent to Introduce Extraneous Offenses and/or Bad Acts." The four-page document included the State's intent to use the extraneous evidence that "[Fuller] was in possession and trafficking marihuana in Wichita Falls, Wichita County, TX prior to 10-10-16." For a variety of reasons, Fuller maintains the State's notice was inadequate. Because Fuller cannot show he suffered harm as a result of the introduction of the complained-of evidence, we find it unnecessary to address whether the State's notice was sufficient.

did not influence the jury or had but slight effect."  *See McDonald*, 179 S.W.3d at 578–79; *Hernandez*, 176 S.W.3d at 826 ("[A]ppellant has failed to make any showing of how his defense strategy might have been different had the State explicitly notified him that it intended to offer the complete tape recording at trial, or how his defense was 'injuriously' affected by the State's failure to provide reasonable notice.").

We overrule Fuller's point of error.

## III. Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:        November 19, 2018
Date Decided:          December 14, 2018

Do Not Publish