NO. 07-09-00308-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 12, 2010

RICHARD P. ESCH, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-412,999; HONORABLE JIM BOB DARNELL, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Richard P. Esch, appeals his conviction by jury for the offense of causing serious bodily injury to a child,[1] and jury-assessed punishment of fifty-five years incarceration in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ).  We will modify the judgment and affirm.

Background

In the early morning hours of March 7, 2005, personnel at University Medical Center (UMC) in Lubbock, Texas, reported their suspicion that appellant's daughter,

---

[1] See TEX. PENAL CODE ANN. § 22.04 (a)(1), (e) (Vernon Supp. 2009).

Kylie, had been the victim of child abuse. According to members of the staff, Kylie had suffered multiple injuries, including shaken baby syndrome.

Appellant and Kylie's mother, Stephanie Hersom, had three children together. Kylie was the youngest of these children and was approximately two and a half months old at the time that the suspected abuse was reported. At that time, appellant was the primary caretaker of the children, so he was considered the primary suspect in the abuse.

On March 4, 2005, appellant watched the children while Hersom went to work. During a break in her work day, Hersom called appellant to check on the children, and appellant informed Hersom that Kylie had thrown up three or four times. Hersom called appellant again during a later break, and appellant informed her that the children were with Cathy and Crystal Timms so that appellant could go look for a job. The Timmses watched the children on March 4 for approximately five hours. When Hersom returned home from work, Kylie appeared to be well and in good spirits.

On March 5, Hersom again had to work. She did not notice anything wrong with Kylie before leaving for work. Hersom called appellant during a break and appellant told her that Kylie did not eat much, but appellant did not seem concerned about this. Hersom's cousin, Lisa Murdock, contacted Hersom and offered to watch Kylie for a portion of the day. Hersom was still at work when Murdock arrived to take Kylie. When Murdock entered the home, she noticed that the two older children were covered in baby oil and had been writing on each other with markers. Murdock found Kylie alone in the master bedroom with her face covered by a blanket. Kylie was sucking on an

2

empty bottle. Murdock described Kylie as unresponsive and, when Murdock picked Kylie up, Kylie wimpered and moaned, which struck Murdock as odd. Murdock changed Kylie's diaper and noticed that Kylie had a new bruise on her chest. When she asked appellant about the bruise, appellant told her that one of the older children had fallen on Kylie. Over the course of the time that Murdock spent with Kylie, Murdock felt that Kylie was just not acting like herself. According to Murdock, Kylie was lethargic, unresponsive, and appeared to be in pain. Murdock called Hersom at work and recommended that Kylie be taken to the emergency room. Hersom called appellant and asked him to take Kylie to the emergency room, but appellant got upset and refused to take Kylie.

Hersom went straight home after she got off work. Murdock still had Kylie. Hersom again talked to appellant about taking Kylie to the emergency room. After some argument, appellant agreed to pick Kylie up from Murdock and take her to the emergency room. At the Levelland Hospital emergency room, Hersom informed the staff of the symptoms that Murdock had described to her. Appellant added that Kylie had been vomiting and had diarrhea. The emergency room diagnosed Kylie with gastroenteritis and dehydration and released her.

The following morning, March 6, Hersom awoke to find appellant tending to Kylie. Kylie was crying and Hersom witnessed appellant spank Kylie on the behind. Hersom confronted appellant regarding the spanking, which angered appellant. Kylie looked worse than she had the night before and cried throughout the morning. By the evening, Kylie's condition had deteriorated further. She had become very pale and laid in her

3

crib lifelessly. Around 5:00 p.m., Hersom noticed that Kylie's hands and feet began to twitch and, at some point thereafter, Kylie's face began to twitch as well. Appellant and Hersom took the children to Hersom's mother's house as her mother was going to watch the children that evening. Upon seeing Kylie's condition, Hersom's mother told appellant and Hersom to take Kylie to the emergency room immediately.

At the emergency room, Hersom and appellant again recounted Kylie's symptoms to the doctors. After examining Kylie, the doctors informed Hersom and appellant that blood was found in Kylie's spinal column and that she would have to be "life-flighted" to UMC in Lubbock.

As mentioned before, personnel at UMC suspected that Kylie had been abused, so they contacted Children's Protective Services (CPS). CPS investigator, Jamie Blount, went to the hospital to investigate the report. As part of the investigation, Blount interviewed appellant. Blount described appellant as "curt and dismissive" during the interview. Appellant admitted that he was Kylie's primary caretaker on March 5 and 6. Appellant told Blount that one of the older children had fallen on Kylie's chest, and that Kylie had not had much to eat or drink since that incident. Because appellant was Kylie's primary caregiver during the times that Kylie's injuries were believed to have occurred, Blount believed that appellant was the primary suspect in causing Kylie's injuries.

Subsequently, the Wolfforth Police Department began a criminal investigation into the injuries to Kylie. Wolfforth Police Chief Rick Scott obtained background information on the case from CPS and Kylie's doctors. Appellant was interviewed by

4

police on four different occasions and gave two written statements to the police. In one of the interviews, about a week after the investigation began, appellant told police that he had performed CPR on Kylie on March 4. According to appellant, Kylie appeared to have asphyxiated on vomit necessitating appellant's performance of CPR. However, appellant did not call emergency services nor did he inform Hersom of his need to perform CPR on Kylie on March 4. After an approximate year-long investigation into Kylie's injuries, Chief Scott determined that appellant likely caused Kylie's injuries.

Appellant was indicted for the offense of causing serious bodily injury to a child. He was further alleged to have used a deadly weapon in the commission of the offense, to-wit, his hands. Appellant pled not guilty and the case proceeded to trial. At the close of evidence, the jury found appellant guilty of the indicted offense and made an affirmative deadly weapon finding. Following a hearing on punishment, the jury sentenced appellant to incarceration in the ID-TDCJ for a period of fifty-five years and assessed a $10,000 fine. The trial court subsequently entered a Judgment of Conviction by Jury that memorialized the jury's verdicts, but that also assessed court costs against appellant in an amount of $9,637.50.[2] It is from this judgment that appellant appeals.

By his appeal, appellant presents four issues. By his first two issues, appellant challenges the factual sufficiency of the evidence used to establish his guilt, specifically in reference to identity and causation. By his third issue, appellant contends that the trial court abused its discretion by excluding expert witness testimony offered by

---

[2] The Judgment further delineates that $373.00 of these costs are for court costs, while the remaining $9,264.50 are for court-appointed attorney's fees.

appellant. By his fourth issue, appellant contends that the evidence was legally insufficient to support the trial court's assessment of court-appointed attorney's fees against appellant.

Factual Sufficiency

By his first two issues, appellant challenges the factual sufficiency of the evidence to support his conviction for the offense of injury to a child. Specifically, appellant challenges the sufficiency of the evidence to establish that he was the person that committed the crime, and that the serious bodily injuries sustained by Kylie were the result of a crime.

<u>Standard of Review</u>

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See <u>Watson v. State</u>, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See <u>id</u>. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that either the evidence supporting the jury's verdict is so weak as to be clearly wrong or manifestly unjust or the great weight and preponderance of the evidence contradicts the jury's verdict. See <u>Laster v. State</u>, 275 S.W.3d 512, 518

(Tex.Crim.App. 2009); Watson, 204 S.W.3d at 417. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). However, when a defendant's version of the facts conflicts with other evidence, it is the jury's prerogative to judge the credibility of the evidence and to ascribe the weight to be given to the evidence. Jones v. State, 944 S.W.2d 642, 647-48 (Tex.Crim.App. 1996).

Identity

By his first issue, appellant contends that the evidence that he was the person that caused Kylie's injuries was factually insufficient. Appellant's contention is premised on the emergency room diagnosis of March 5, which appellant contends is inconsistent with Kylie having sustained shaken baby syndrome injuries on or before March 5. The State responds that the evidence is factually sufficient to establish that appellant caused Kylie's injuries and, further, appellant did not raise this alternative hypothesis at any time during trial.

In the present case, appellant contends that, if the evidence establishes that Kylie did not sustain the injuries for which he is charged until after March 5, then the evidence is too weak to establish that appellant, rather than Hersom, caused Kylie's injuries. Appellant cites the emergency room report of March 5 as providing that Kylie "looks well, alert, and in no distress." Combined with expert medical opinion testimony that the onset of symptoms in a shaken baby syndrome case appear almost immediately and rapidly deteriorate, appellant's main argument presented by this issue

7

is that it was more probable that Kylie's injuries occurred on March 6, when both appellant and Hersom spent the day with the child.

None of the medical experts could testify as to the specific time that Kylie sustained the injuries for which appellant was tried. Further, there was no eyewitness of the incident causing Kylie's injuries. Therefore, evidence establishing that anyone caused Kylie's injuries will be circumstantial. Evidence was presented that Kylie had sustained injuries at varying periods of time, and that at least one of these periods was when appellant had nearly exclusive care of the child. Further, the jury heard evidence that appellant was reluctant to take Kylie for medical care, even after Kylie's condition began to rapidly deteriorate. In addition, Hersom testified that appellant's attitude toward Kylie had become one of anger or frustration and that, in the morning of March 6, she saw appellant spank Kylie for keeping appellant awake all night. Clearly, the evidence established that appellant had access to Kylie throughout the time that Kylie may have sustained these injuries.

However, the jury also heard evidence that Hersom had access to the child during the evening and night hours of March 5 and throughout the day of March 6. Evidence was presented that Hersom exhibited a somewhat cavalier attitude in the way that she cared for her children. In addition, while Hersom suffered from a disability to her legs, evidence was presented to the jury that would have allowed the jury to infer that Hersom had the physical ability to have inflicted the injuries to Kylie.

Appellant's main argument under his first issue is nothing more than a reasonable alternative hypothesis of how Kylie sustained the shaken baby syndrome

8

injuries. While such a reasonable hypothesis may be relevant to our review of the factual sufficiency of the evidence, it is not determinative. See Wilson v. State, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999). According to appellant's hypothesis, Kylie's injuries could have been caused by Hersom, rather than appellant, because Hersom had the opportunity to commit the offense. While it is possible that Kylie was not injured until a time when Hersom had access to, and, therefore, opportunity to have inflicted the injuries on Kylie, appellant's hypothetical version of the facts conflicts with other evidence that presents a version of the facts in which appellant intentionally or knowingly caused Kylie's serious bodily injury. By definition, evidence that would allow a jury to rationally conclude that appellant intentionally or knowingly caused Kylie serious bodily injury beyond a reasonable doubt is factually sufficient evidence, regardless of the existence of evidence that would support the possibility that Kylie's injuries might have been caused by another person. Further, when an appellant presents a factual sufficiency challenge based on a version of the facts that conflicts with other evidence, it is the jury's prerogative to judge the credibility of the evidence and to ascribe the weight to be given to the evidence, Jones, 944 S.W.2d at 647-48, and we, as a reviewing court, are not at liberty to substitute our judgment for that of the jury. See Watson, 204 S.W.3d at 417.

Consequently, we overrule appellant's first issue.

Causation

By his second issue, appellant contends that the evidence that Kylie's injuries were the result of shaken baby syndrome is factually insufficient. Appellant's argument

9

is premised on the Levelland Hospital's March 6 diagnosis of Kylie possibly having meningitis. The State responds that the great weight and preponderance of the medical evidence in the case supports the conclusion that Kylie's symptoms were the result of shaken baby syndrome.

Appellant points to the diagnosis of possible meningitis contained in the above-referenced medical record and then presents a number of symptoms of meningitis that are consistent with the symptoms exhibited by Kylie. However, none of these symptoms of meningitis were presented to the jury in any manner. Rather, appellant cites sources outside of the record to support his argument. In fact, this theory of causation was evidenced to the jury, in total, by nothing more than the diagnosis of possible meningitis found in this one medical record. Even if we were to assume that the jury should have seized upon this one piece of evidence to the exclusion of the other evidence of causation, the medical record cited by appellant diagnoses Kylie with either meningitis or trauma. Further, all of the expert medical opinion testimony offered at trial was consistent that Kylie's injuries were the result of shaken baby syndrome.

We overrule appellant's second issue.

Exclusion of Expert Testimony

By his third issue, appellant contends that the trial court erred in excluding the expert testimony of Wendy Thal. According to appellant, Thal's testimony was relevant to implicate Hersom in causing Kylie's injuries and, thus, would have decreased the likelihood that appellant committed the crime. The State responds that appellant failed to timely designate Thal as an expert witness, as had been ordered by the trial court,

and, even if it was error for the trial court to have excluded Thal as an expert, the error was harmless because Thal's testimony was cumulative.

A trial court's decision to admit or exclude evidence, including determining whether a witness is qualified as an expert, is reviewed under an abuse of discretion standard.  See TEX. R. EVID. 104(a); Penry v. State, 903 S.W.2d 715, 762 (Tex.Crim.App. 1995).  The trial court abuses its discretion if its ruling is so clearly wrong as to be outside the zone of reasonable disagreement.  See McDonald v. State, 179 S.W.3d 571, 576 (Tex.Crim.App. 2005).  Error in ruling on the admissibility of evidence is generally non-constitutional error, see Walters v. State, 247 S.W.3d 204, 219 (Tex.Crim.App. 2007), and, as such, reversal is justified only if the error affected appellant's substantial rights.  See TEX. R. APP. P. 44.2(b).

Appellant offered Thal as an expert witness to testify regarding her evaluation of Hersom and Kylie's interaction and bonding as of May of 2005.  Thal, who performed this evaluation as a nurse consultant for CPS, testified, by way of a bill of exception, that Kylie was not bonded to Hersom and that Kylie appeared to be uncomfortable in her mother's presence.  Thal further testified that she had evaluated appellant at the time that she evaluated Hersom, but that the bonding assessment report she had prepared relating to appellant had been lost.

While it appears that the trial court excluded Thal as an expert on the basis of appellant's failure to disclose her as an expert witness in his pre-trial disclosures, we

11

believe that the record establishes that the trial court's ruling was firmly within the zone of reasonable disagreement.[3]

First, nothing in the bill of exception presenting Thal's testimony establishes that she would be qualified to testify as an expert on the subject matter upon which she was to testify. See Penry, 903 S.W.2d at 762. According to Thal's testimony, at the time of trial, she was an assistant professor at Texas Tech University and she taught both undergraduate classes and classes in the nurse practitioner program. In 2005, Thal was working with West Texas A & M University and as a nurse consultant with CPS. While Thal testified that she performed bonding assessments as part of her duties as a CPS consultant, nothing in her testimony established how she would be expertly qualified to perform such an assessment. Thal did not testify regarding her education, did not quantify her experience working with CPS, and did not identify any additional training that would reasonably qualify her to be an expert in assessing the bond between a mother and an infant child. Thus, because appellant wholly failed to establish that Thal was an expert on the subject matter upon which she was called to testify, we conclude that the trial court did not abuse its discretion in excluding Thal's testimony as an expert.[4]

Further, even if the evidence should have been admitted as expert testimony, its exclusion was not harmful to appellant. The lack of a bond between Hersom and Kylie

---

[3] For purposes of our analysis of this issue, we will assume that the trial court's exclusion of Thal based on appellant's failure to disclose her as an expert witness was erroneous. However, we wish to emphasize that this assumption is not an expression of our opinion on that matter.

[4] Appellant did not offer Thal's testimony as a fact witness.

would be expected when four-month-old Kylie had been separated from her mother for the previous two months. Additionally, this evidence was cumulative of other evidence establishing that Hersom was not an ideal mother to Kylie or to her other children. Finally, because Thal's bonding assessment relating to appellant was not available, Thal's assessment of Hersom was significantly lessened in terms of exculpating appellant since the jury was unable to compare the assessments and because nothing in Thal's assessment of Hersom in any way indicated that Hersom exhibited violent tendencies toward Kylie.

Because the trial court did not abuse its discretion in excluding Thal as an expert on the basis of her lack of qualifications, and because the exclusion of Thal's expert testimony did not affect a substantial right of appellant, we overrule appellant's third issue.

### Assessment of Court-Appointed Attorney's Fees

By his fourth and final issue, appellant contends that the evidence was legally insufficient to support the trial court's assessment of court-appointed attorney's fees. The State concedes error under this issue. Both parties contend that the error may be remedied by this Court striking the assessment of attorney's fees from the trial court's judgment.

Article 26.05(g) of the Texas Code of Criminal Procedure provides, "[i]f the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, . . . the court shall order the defendant to pay during the pendency of the charges or, if convicted, as court costs the amount

13

that it finds the defendant is able to pay." TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (Vernon Supp. 2009). The key factors in determining the propriety of ordering reimbursement of fees are the defendant's financial resources and ability to pay. Mayer v. State, 309 S.W.3d 552, 556 (Tex.Crim.App. 2010). "Without evidence to demonstrate appellant's financial resources to offset the costs of the legal services, the trial court erred in ordering reimbursement of appointed attorney fees." Mayer v. State, 274 S.W.3d 898, 901 (Tex.App.—Amarillo 2008), aff'd, 309 S.W.3d at 558.

Here, the record includes no evidence that appellant had the ability to pay attorney's fees at the time that the trial court assessed them. As such, we conclude that the evidence supporting this portion of the judgment is legally insufficient and modify the judgment to remove the assessment of $9,264.50 for attorney's fees. See id. at 902.

We sustain appellant's fourth issue and will modify the judgment to delete the trial court's assessment of attorney's fees.

## Conclusion

For the foregoing reasons, we modify the judgment of the trial court to delete the assessment of $9,264.50 for attorney's fees. As modified, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.