

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00031-CR

CHRISTOPHER CARL KOHLER                                    APPELLANT

V.

THE STATE OF TEXAS                                            STATE

----------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In three issues, Appellant Christopher Carl Kohler appeals his punishment for misdemeanor assault causing bodily injury to a family member. *See* Tex. Penal Code Ann. §§ 12.21, 22.01 (Vernon Supp. 2010). We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

Kohler and Patricia Paskow, the complainant, dated on and off for approximately ten years. On May 26, 2009, Kohler's parents dropped him off to spend the night at Paskow's house.

Paskow testified that Kohler started drinking as soon as he arrived at her house and that she left with a friend to go to the store. When she returned, she and Kohler started arguing "because he was really drunk," and he thought she and her friends had been talking about him. They started arguing, and she locked herself and her two dogs in the bathroom because it was "hard to deal with him when he's drinking."

Paskow described the incident as follows:

> I heard him on the phone in the living room, and he was calling a girl asking her to pick him up from my house, and he was talking negatively about me.
>
> At that point, I told him that he needed to leave my house. He had a bag by the front door, so I went to pick up the bag and throw it outside, because I wanted him to have to get it so I could shut the door and lock it.[2] Because there have been instances before where I tried to get him to leave, and he put his foot in the door, and it was a struggle. So when I had the briefcase in my hand and I went to go throw it outside, he shoved me. I went through the screen, hit the wall on the outside, and there were two girls walking on the street. They saw what happened, and they called 911.

The screen door popped off from the force of the push. Paskow stated that Kohler did not care that she went through the screen door, that he was more

---

[2]Paskow additionally testified that Kohler told her that he did not want to leave when she told him to leave and every time she asked him to leave before she threw his bag outside, that he said "no."

concerned about his bag being on the ground, and that everything fell out of Kohler's bag when she threw it outside. Paskow suffered scrapes to her elbow and ankle and a scratch on her arm.

Hickory Creek Police Officer Jason Stevens testified that he responded to the 911 call. He made contact with the caller, Carmen Elizabeth, who told him that as she walked down the street, she heard screams coming from a house and a woman screaming for someone to call 911. Officer Stevens approached the identified house from the side and heard a man's voice yelling in an aggressive and angry way. As he approached the front of the house, he saw clothing, bags, and papers strewn across the front yard and front porch area and saw that the front door was open, the screen door was closed, and the screen had been pushed out from the door. Paskow, in tears, told him that her boyfriend had pushed her through the screen door while they were having an argument.

Officer Stevens stated that Kohler's eyes were glassy and bloodshot, that his speech was a little slurred, and that there was a strong odor of alcohol from his breath. Kohler told him that he had had two vodka mixed drinks, that he had not done anything wrong, and that Paskow had damaged the door. Officer Stevens took photographs of the scene and of Paskow's injuries, and the photos were later admitted in evidence and published to the jury. He arrested Kohler.

A jury found Kohler guilty of the Class A misdemeanor offense of assault causing bodily injury to a family member. Following the guilty verdict and immediately before the punishment phase of trial, the State expressed its intent

3

to offer in evidence six exhibits documenting Kohler's prior convictions. Kohler did not object to four of the documents—State's Exhibits 21 through 24—which showed his conviction for misdemeanor DWI in 2008, for which he received 150 days' confinement, probated for twenty-four months, and a $750 fine; a federal conviction for conspiracy to possess with intent to distribute and distribution of a controlled substance ("MDMA/Ecstasy") in 2002, for which he received thirty-three months' confinement; and two state convictions for possession of a controlled substance with intent to deliver in 2002, for which he received five years' confinement.

Kohler objected to State's Exhibit 25—a 1998 deferred adjudication community supervision judgment for the class B misdemeanor offense of failure to stop and provide identifying information—arguing that it was too remote to be admissible. Kohler also objected to State's Exhibit 26—a certified computer printout of a 2005 DWI conviction—arguing that it was not properly authenticated and was insufficient to establish that Kohler was the person convicted. The trial court overruled both objections.

The jury assessed punishment at 365 days' confinement and a $4,000 fine, and the trial court sentenced Kohler accordingly. This appeal followed.

### III. Evidence

In his first two issues, Kohler complains that the trial court erred by admitting State's Exhibits 25 and 26. In his third issue, he argues that the

4

cumulative effect of these errors resulted in such harm that a new punishment trial is warranted.

We review a trial court's admission of evidence for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Paschall v. State*, 285 S.W.3d 166, 172 (Tex. App.—Fort Worth 2009, pet. ref'd). A trial court abuses its discretion when its decision is "so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *McDonald*, 179 S.W.3d at 576.

In his first issue, Kohler complains that State's Exhibit 25 was too remote to be admissible. The following exchange took place regarding this exhibit:

> [Defense Counsel]: Exhibit 25, Your Honor, purports to be a judgment dated 1998 for some violation of Sections – I believe that says 550.022 of the Transportation Code. I believe that is far too remote.
>
> The Court: Were there intervening judgments . . . Because if there are intervening judgments—which I don't know if those [State's Exhibits 21–24] are . . . [t]hen that would take away the remoteness would it not?
>
> [Defense Counsel]: Perhaps so, Judge.
>
> . . . .
>
> The Court: And the only objection you had to [State's Exhibit] 25 was that it was too remote in time; is that correct?
>
> [Defense Counsel]: Yes, Your Honor.
>
> The Court: Okay. And I'll overrule that objection.

Kohler specifically asserts that

5

[o]n the question of "relevance," as recognized by a Report of the U.S. Senate Committee on the Judiciary in 1993, prior convictions "over ten years old generally do not have much probative value"; and for precisely that reason, the Federal Rules of Evidence, which provide appropriate guidance for interpretation of the Texas Rules of Evidence, have adopted a policy that "convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." In turn, as a matter of legislative intent, interpretation of the phrase "relevant to sentencing" in Article 37.07, Section 3(a)(1) must be guided, like the Texas Rules of Evidence, by reference to general principles of "relevance" found in the Federal Rules. [Internal citations omitted.]

Section 3(a)(1) of article 37.07 of the code of criminal procedure states, in pertinent part, "Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to *any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant*." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2010) (emphasis added).

Our court of criminal appeals has explained the connection between this section of the code of criminal procedure and the relevance of a prior criminal record, which is instructive in the disposition of this appeal:

> Although there is no definition of the term "criminal record" in the statute, it is reasonable that the term would include the sentences that the courts assessed for prior convictions. . . .

> The Code of Criminal Procedure also does not define the term "relevant." Texas Rule of Criminal Evidence 401 is helpful to determine what should be admissible under article 37.07 section 3(a). The definition of relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Sentencing presents different issues than a verdict of guilt or innocence because the jury or trial

6

judge chooses from a punishment range, rather than deciding whether a defendant is guilty. This Court has observed that the definition of "relevant" within the Texas Rules of Criminal Evidence is not a perfect fit in the punishment context.

> [A]dmissibility of evidence at the punishment phase of a non-capital felony offense is a function of policy rather than relevancy. This is so because by and large there are no discreet factual issues at the punishment stage. There are simply no distinct "fact[s] ... of consequence" that proffered evidence can be said to make more or less likely to exist. Rather, "[d]eciding what punishment to assess is a normative process, not intrinsically factbound."

Determining what is relevant then should be a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.

The legislature has shown through its enactment of article 37.07 section 3(a) that a defendant's prior record is relevant to the decision that the jury makes. Just as the facts of the instant offense are relevant to tailor the sentence to the particular offense, prior convictions are relevant to tailor the sentence to the particular defendant.

. . . .

One of the goals of the Penal Code is to prevent the defendant from continuing to engage in criminal behavior after that defendant has completed the sentence. When a jury has the task of assessing a sentence for a defendant who has committed crimes in the past, especially when those crimes are the same as or similar to the offense with which that defendant is currently charged, it is helpful to know the length of the sentence that was too short to prevent the recurrence of criminal behavior by that particular defendant.

*Rogers v. State*, 991 S.W.2d 263, 265–66 (Tex. Crim. App. 1999) (internal citations omitted). This court has observed that the statute expressly allows the trial court to consider at punishment any matter deemed relevant to sentencing

7

and that the statute does not mention, as a basis for excluding such evidence, staleness or limitations. *Tow v. State*, 953 S.W.2d 546, 547–48 (Tex. App.—Fort Worth 1997, no pet.). We hold that the trial court did not abuse its discretion by admitting State's Exhibit 25, and we overrule Kohler's first issue.

As for his second issue, Kohler claims that the trial court erred by admitting State's Exhibit 26, a certified copy of a computer printout from the Dallas County Certified Copy Department recounting a 2005 probated DWI. The record shows the following exchange:

> [Defense Counsel]: And Exhibit 26, we would object to it as not being properly authenticated. There's nothing to tie this document to my client. There is no fingerprint associated with the document that would properly identify him and tie that to my client.
>
> . . . .
>
> The Court: I haven't seen those other documents [State's Exhibits 21 through 24], so is there a connection [between] these documents that would link these, or . . . .
>
> . . . .
>
> There's no objection to State's Exhibits 21 through 24, and there's going to be a stipulation that the defendant is the same person that these documents pertain to?
>
> [Defense counsel]: That's correct.
>
> The Court: Okay. Okay. So State's Exhibits 21 through 24 are admitted into evidence.
>
> Let me look. I do notice right off the bat that in the exhibits— the exhibits that are not objected to and already admitted into evidence, that you say pertain to your client, they have the same date of birth that [is] in State's Exhibit No. 26. They have the same driver's license number, the same race, same sex. They have the

exact same state—Texas state identification number with the fingerprint page that your client has on one of the other documents that's already been admitted into evidence.

Okay. And with those identification—identifiers, the Court will find that there is sufficient evidence to link them to the defendant, and I will overrule the objection as to State's Exhibit No. 26.

The State's burden of proof is to establish beyond a reasonable doubt that a conviction exists and that the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). Kohler argues that the computer printout offered by the State does not prove the prior offense sought to be established and that the computer printout does not link him to the conviction.

An examination of the exhibit reveals that the Dallas County Clerk's Office could not locate the criminal case jacket and instead enclosed a "certified copy of the computer printout." The computer printout contains no judgment or fingerprint. However, the State attempted to link Kohler to the prior offenses contained in State's Exhibits 21 through 24, which were admitted without objection, based on the fact that the driver license's number, race, sex, and Texas state identification number were the same.

Assuming without deciding that the trial court abused its discretion by admitting State's Exhibit 26, we will determine whether the exhibit had a substantial or injurious effect on Kohler's punishment and affected his substantial rights. Tex. R. App. P. 44.2(b*)*; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *see also King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In making this

determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

We first note that Kohler was assessed 365 days' confinement in the county jail and a $4,000 fine as punishment, which is within the punishment range for the offense. *See* Tex. Penal Code Ann. § 12.21 (stating that an individual found guilty of a class A misdemeanor shall be punished by a fine not to exceed $4,000, confinement not to exceed one year, or both). Second, we observe that the unobjected-to exhibits showed a 2008 DWI conviction for which Kohler received 150 days' confinement in county jail, probated for twenty-four months, and a $750 fine; a 2002 federal conviction with prison time for conspiracy to possess with intent to distribute, and distribution of, MDMA/Ecstasy; and two 2002 state convictions for possession of a controlled substance with intent to deliver that resulted in a five-year sentence. Finally, we take into account the nature of the offense, wherein the angry and drunk Kohler refused to leave the complainant's residence and, in the resulting altercation, knocked her through a screen door, causing minor injuries. Based on the

10

complainant's testimony, Kohler appeared to have a drinking problem,[3] was more concerned about his belongings than her injuries following the incident, and blamed the complainant for damaging her own property.

Under these circumstances, we cannot say that the admission of a 2005 probated DWI, if error, had a substantial or injurious effect on Kohler's punishment or on his substantial rights. *See King*, 953 S.W.2d at 271; *see also Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (stating that an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect"). We overrule Kohler's second issue. And because we conclude that the admission of State's Exhibit 25 was not error and that error, if any, in admitting State's Exhibit 26 was harmless, there is no "cumulative error" of such harm as to warrant a new trial. We overrule Kohler's third issue.

## IV. Conclusion

---

[3]Paskow testified that when Kohler "gets really drunk, he doesn't know what he's doing. . . . He does things, strange things," and she stated that "[h]e drinks anything straight, just out of the bottle, when he wakes up." She said, "[I]t's hard to deal with him when he's drinking. I've had to call his parents before from Oklahoma, and they drove three hours to pick him straight up because I couldn't deal with him."

11

Having overruled all of Kohler's issues, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 17, 2011