02-10-031-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00031-CR

 

 


 
 
 Christopher Carl Kohler
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

----------

 

FROM County Criminal Court No. 1
OF Denton COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.    
Introduction

In
three issues, Appellant Christopher Carl Kohler appeals his punishment for misdemeanor assault causing bodily injury to a
family member.  See Tex. Penal Code Ann. §§ 12.21, 22.01 (Vernon Supp. 2010).  We affirm.

II.  
Factual
and Procedural History

Kohler and Patricia Paskow,
the complainant, dated on and off for approximately ten years.  On May 26, 2009, Kohler’s parents dropped him
off to spend the night at Paskow’s house.

     Paskow testified that Kohler started drinking as soon as he
arrived at her house and that she left with a friend to go to the store.  When she returned, she and Kohler started
arguing “because he was really drunk,” and he thought she and her friends had
been talking about him.  They started
arguing, and she locked herself and her two dogs in the bathroom because it was
“hard to deal with him when he’s drinking.”

Paskow
described the incident as follows:

     I heard him on the phone in the
living room, and he was calling a girl asking her to pick him up from my house,
and he was talking negatively about me.

 

     At that point, I told him that
he needed to leave my house.  He had a
bag by the front door, so I went to pick up the bag and throw it outside,
because I wanted him to have to get it so I could shut the door and lock it.[[2]]  Because there have been
instances before where I tried to get him to leave, and he put his foot in the
door, and it was a struggle.  So when I
had the briefcase in my hand and I went to go throw it outside, he shoved
me.  I went through the screen, hit the
wall on the outside, and there were two girls walking on the street.  They saw what happened, and they called 911.

 

The screen door popped off from the force of the
push.  Paskow
stated that Kohler did not care that she went through the screen door, that he
was more concerned about his bag being on the ground, and that everything fell
out of Kohler’s bag when she threw it outside.  Paskow suffered scrapes
to her elbow and ankle and a scratch on her arm.

          Hickory
Creek Police Officer Jason Stevens testified that he responded to the 911 call.  He made
contact with the caller, Carmen Elizabeth, who told him that as she walked down
the street, she heard screams coming from a house and a woman screaming for
someone to call 911.  Officer Stevens
approached the identified house from the side and heard a man’s voice yelling
in an aggressive and angry way.  As he
approached the front of the house, he saw clothing, bags, and papers strewn
across the front yard and front porch area and saw that the front door was
open, the screen door was closed, and the screen had been pushed out from the
door.  Paskow,
in tears, told him that her boyfriend had pushed her through the screen door
while they were having an argument.

          Officer
Stevens stated that Kohler’s eyes were glassy and bloodshot, that his speech
was a little slurred, and that there was a strong odor of alcohol from his
breath.  Kohler told him that he had had
two vodka mixed drinks, that he had not done anything
wrong, and that Paskow had damaged the door.  Officer Stevens took photographs of the scene
and of Paskow’s injuries,
and the photos were later admitted in evidence and published to the jury.  He arrested Kohler.

          A
jury found Kohler guilty of the Class A misdemeanor offense of assault causing bodily injury to a
family member.  Following the guilty verdict and immediately before
the punishment phase of trial, the State expressed its intent to offer in
evidence six exhibits documenting Kohler’s prior convictions.  Kohler did not object to four of the documents—State’s
Exhibits 21 through 24—which showed his conviction for misdemeanor DWI in 2008,
for which he received 150 days’ confinement, probated for twenty-four months,
and a $750 fine; a federal conviction for conspiracy to possess with intent to
distribute and distribution of a controlled substance (“MDMA/Ecstasy”) in 2002,
for which he received thirty-three months’ confinement; and two state convictions
for possession of a controlled substance with intent to deliver in 2002, for
which he received five years’ confinement.

Kohler objected to State’s Exhibit 25—a 1998
deferred adjudication community supervision judgment for the class B misdemeanor
offense of failure to stop and provide identifying information—arguing that it was
too remote to be admissible.  Kohler also
objected to State’s Exhibit 26—a certified computer printout of a 2005 DWI
conviction—arguing that it was not properly authenticated and was insufficient
to establish that Kohler was the person convicted.  The trial court overruled both objections.

The jury assessed punishment at 365 days’
confinement and a $4,000 fine, and the trial court sentenced Kohler
accordingly.  This appeal followed.

III.   Evidence

In his first two issues, Kohler complains that the
trial court erred by admitting State’s Exhibits 25 and 26.  In his third issue, he argues that the
cumulative effect of these errors resulted in such harm that a new punishment
trial is warranted.

We review a trial court’s admission of evidence for an
abuse of discretion.  McDonald v. State, 179 S.W.3d 571, 576
(Tex. Crim. App. 2005); Paschall
v. State, 285 S.W.3d 166,
172 (Tex. App.—Fort Worth 2009, pet. ref’d).  A trial court abuses its discretion when its
decision is “so clearly wrong as to lie outside that zone within which
reasonable persons might disagree.”  McDonald, 179 S.W.3d
at 576.

In
his first issue, Kohler complains that State’s Exhibit 25 was too remote to be
admissible.  The following exchange took
place regarding this exhibit: 

[Defense Counsel]:  Exhibit 25, Your Honor, purports to be a
judgment dated 1998 for some violation of Sections – I believe that says 550.022
of the Transportation Code.  I believe
that is far too remote.

 

The Court:  Were there intervening judgments . . .
Because if there are intervening judgments—which I don’t know if those [State’s
Exhibits 21–24] are . . . [t]hen that would take away the remoteness would it
not?

 

[Defense Counsel]:  Perhaps so, Judge.

 

                    .
. . . 

 

The Court:  And the only objection you had to [State’s
Exhibit] 25 was that it was too remote in time; is that correct?

 

[Defense Counsel]: Yes,
Your Honor.

 

The Court: Okay.  And I’ll overrule that objection. 

 

Kohler
specifically asserts that 

[o]n the question of
“relevance,” as recognized by a Report of the U.S. Senate Committee on the Judiciary
in 1993, prior convictions “over ten years old generally do not have much
probative value”; and for precisely that reason, the Federal Rules of Evidence,
which provide appropriate guidance for interpretation of the Texas Rules of
Evidence, have adopted a policy that “convictions over 10 years old will be
admitted very rarely and only in exceptional circumstances.”  In turn, as a matter of legislative intent,
interpretation of the phrase “relevant to sentencing” in Article 37.07, Section
3(a)(1) must be guided, like the Texas Rules of Evidence, by reference to
general principles of “relevance” found in the Federal Rules.  [Internal citations omitted.] 

 

Section
3(a)(1) of article 37.07 of the code of criminal procedure
states, in pertinent part, “Regardless of the plea and whether the punishment
be assessed by the judge or the jury, evidence may be offered by the state and
the defendant as to any matter the court
deems relevant to sentencing, including but not limited to the prior criminal
record of the defendant.”  Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2010) (emphasis added).

Our court
of criminal appeals has explained the connection between this section of the code
of criminal procedure and the relevance of a prior criminal record, which is
instructive in the disposition of this appeal:

Although there is no
definition of the term “criminal record” in the statute, it is reasonable that
the term would include the sentences that the courts assessed for prior
convictions. . . .  

 

The Code of Criminal
Procedure also does not define the term “relevant.”  Texas Rule of Criminal Evidence 401 is
helpful to determine what should be admissible under article 37.07 section
3(a).  The definition of relevant
evidence is “evidence having any tendency to make the existence of any fact
that is of consequence to the determination of the action more probable or less
probable than it would be without the evidence.”  Sentencing presents different issues than a
verdict of guilt or innocence because the jury or trial judge chooses from a
punishment range, rather than deciding whether a defendant is guilty.  This Court has observed that the definition
of “relevant” within the Texas Rules of Criminal Evidence is not a perfect fit
in the punishment context.

 

[A]dmissibility of evidence at the punishment phase of a
non-capital felony offense is a function of policy rather than relevancy.  This is so because by and large there are no
discreet factual issues at the punishment stage.  There are simply no distinct “fact[s] ... of
consequence” that proffered evidence can be said to make more or less likely to
exist.  Rather, “[d]eciding
what punishment to assess is a normative process, not intrinsically factbound.”

 

Determining what is
relevant then should be a question of what is helpful to the jury in
determining the appropriate sentence for a particular defendant in a particular
case.

 

          The legislature has shown through its
enactment of article 37.07 section 3(a) that a defendant’s prior record is
relevant to the decision that the jury makes. 
Just as the facts of the instant offense are relevant to tailor the
sentence to the particular offense, prior convictions are relevant to tailor
the sentence to the particular defendant. 

 

                    .
. . . 

 

One of the goals of
the Penal Code is to prevent the defendant from continuing to engage in
criminal behavior after that defendant has completed the sentence.  When a jury has the task of assessing a
sentence for a defendant who has committed crimes in the past, especially when
those crimes are the same as or similar to the offense with which that
defendant is currently charged, it is helpful to know the length of the
sentence that was too short to prevent the recurrence of criminal behavior by
that particular defendant.

 

Rogers v. State,
991 S.W.2d 263, 265–66 (Tex. Crim. App. 1999) (internal citations omitted).  This court has observed that the statute
expressly allows the trial court to consider at punishment any matter deemed
relevant to sentencing and that the statute does not mention, as a basis for
excluding such evidence, staleness or limitations.  Tow v.
State, 953 S.W.2d 546, 547–48 (Tex. App.—Fort Worth 1997, no pet.).  We hold that the trial court did not abuse
its discretion by admitting State’s Exhibit 25, and we overrule Kohler’s first
issue.

As
for his second issue, Kohler claims that the trial court erred by admitting
State’s Exhibit 26, a certified copy of a computer printout from the Dallas
County Certified Copy Department recounting a 2005 probated DWI.  The record shows the following exchange: 

[Defense Counsel]:  And Exhibit 26, we would object to it as not
being properly authenticated.  There’s
nothing to tie this document to my client. 
There is no fingerprint associated with the document that would properly
identify him and tie that to my client.

 

                    .
. . . 

 

The Court:  I haven’t seen those other documents [State’s
Exhibits 21 through 24], so is there a connection [between] these documents
that would link these, or . . . .

 

. . . . 

 

There’s no objection
to State’s Exhibits 21 through 24, and there’s going to be a stipulation that
the defendant is the same person that these documents pertain to?

 

[Defense
counsel]:  That’s correct.

 

The Court:  Okay. 
Okay.  So State’s Exhibits 21
through 24 are admitted into evidence.

 

          Let me look.  I do notice right off the bat that in the
exhibits—the exhibits that are not objected to and already admitted into
evidence, that you say pertain to your client, they have the same date of birth
that [is] in State’s Exhibit No. 26. 
They have the same driver’s license number, the same race, same
sex.  They have the exact same
state—Texas state identification number with the fingerprint page that your
client has on one of the other documents that’s already been admitted into
evidence.

 

          Okay. 
And with those identification—identifiers, the Court will find that
there is sufficient evidence to link them to the defendant, and I will overrule
the objection as to State’s Exhibit No. 26.

 

The
State’s burden of proof is to establish beyond a reasonable doubt that a
conviction exists and that the defendant is linked to that conviction.  Flowers v. State, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007).  Kohler argues that the computer printout
offered by the State does not prove the prior offense sought to be established
and that the computer printout does not link him to the conviction.

An
examination of the exhibit reveals that the Dallas County Clerk’s Office could not locate the criminal case jacket and instead
enclosed a “certified copy of the computer printout.”  The computer printout contains no judgment or
fingerprint.  However, the State
attempted to link Kohler to the prior offenses contained in State’s Exhibits 21
through 24, which were admitted without objection, based on the fact that the
driver license’s number, race, sex, and Texas state identification number were
the same.

Assuming
without deciding that the trial court abused its discretion by admitting
State’s Exhibit 26, we will determine whether the exhibit had a substantial or
injurious effect on Kohler’s punishment and affected his substantial
rights.  Tex. R. App. P. 44.2(b);
Mosley v. State, 983 S.W.2d
249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999); see
also King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  In making this determination, we review the
record as a whole, including any testimony or physical evidence admitted for
the jury=s
consideration, the nature of the evidence supporting the verdict, and the
character of the alleged error and how it might be considered in connection
with other evidence in the case.  Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  We may also consider the jury instructions,
the State=s
theory and any defensive theories, whether the State emphasized the error,
closing arguments, and even voir dire, if
applicable.  Id. at
355–56.

We
first note that Kohler was assessed 365 days’ confinement in the county jail
and a $4,000 fine as punishment, which is within the punishment range for the
offense.  See Tex. Penal Code Ann. § 12.21 (stating that an individual found
guilty of a class A misdemeanor shall be punished by a fine not to exceed
$4,000, confinement not to exceed one year, or both).  Second, we observe that the unobjected-to exhibits showed a 2008 DWI conviction for
which Kohler received 150 days’ confinement in county jail, probated for twenty-four
months, and a $750 fine; a 2002 federal conviction with prison time for conspiracy
to possess with intent to distribute, and distribution of, MDMA/Ecstasy; and two
2002 state convictions for possession of a controlled substance with intent to
deliver that resulted in a five-year sentence.  Finally, we take into account the nature of
the offense, wherein the angry and drunk Kohler refused to leave the
complainant’s residence and, in the resulting altercation, knocked her through
a screen door, causing minor injuries.  Based on the complainant’s testimony, Kohler
appeared to have a drinking problem,[3] was more
concerned about his belongings than her injuries following the incident, and
blamed the complainant for damaging her own property.

Under
these circumstances, we cannot say that the admission of a 2005 probated DWI, if error, had a substantial or injurious
effect on Kohler’s punishment or on his substantial rights.  See King,
953 S.W.2d at 271; see also Solomon
v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (stating that an error
does not affect a substantial right if we have Afair
assurance that the error did not influence the jury, or had but a slight effect@).  We overrule Kohler’s second issue.  And because we conclude that the admission of
State’s Exhibit 25 was not error and that error, if any, in admitting State’s Exhibit
26 was harmless, there is no “cumulative error” of such harm as to warrant a
new trial.  We overrule Kohler’s third
issue.

IV.  Conclusion

Having
overruled all of Kohler’s issues, we affirm the trial court’s judgment.

 

 

BOB MCCOY

JUSTICE

 

PANEL:  DAUPHINOT, WALKER,
and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  February 17, 2011











          [1]See Tex. R. App. P. 47.4.





[2]Paskow additionally testified that Kohler told her that he
did not want to leave when she told him to leave and every time she asked him
to leave before she threw his bag outside, that he said “no.”





[3]Paskow testified that when Kohler “gets really drunk, he
doesn’t know what he’s doing.  . . .  He does things, strange things,” and she
stated that “[h]e drinks anything straight, just out of the bottle, when he
wakes up.”  She said, “[I]t’s hard to deal with him when he’s drinking.  I’ve had to call his parents before from
Oklahoma, and they drove three hours to pick him straight up because I couldn’t
deal with him.”